CASE 70—PETITION EQUITY—MAY 25.

# Holzhauer v. City of Newport.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. CONSTITUTIONAL LAW—LIMITATION AS TO TAX RATE.—Section 157 of the present Constitution, limiting the tax rate of towns and cities, is not self-operative, but is addressed to the Legislature indicating the limitations on the powers it shall give the several classes of towns and cities when it shall come to provide for their classification and government by general laws; and until this is done, which must be within four years from January 1, 1891, the existing charters of towns and cities continue in force, including their tax rates and methods of raising revenue.

2. SAME—LIMITATION AS TO INDEBTEDNESS.—While section 158 of the present Constitution, limiting the indebtedness of towns and cities, does not require legislation to make it operative, yet by the express terms of this section the limitation of ten per centum provided for therein as to certain classes of cities may be exceeded when the proposed indebtedness was authorized under laws in force prior to the adoption of the present Constitution; and there is no limit to this excess; and, however great the amount of the existing and authorized liabilities of any town or city at the time of the adoption of the Constitution, there may be an increase of indebtedness beyond that amount to the extent of two per centum upon the value of the taxable property therein.

Contracts for the reconstruction of the streets of the city of Newport and for the building of sewers, as provided for by acts of the Legislature in force at the time of the adoption of the present Constitution, may lawfully be made, however great the existing indebtedness of the city, or the indebtedness thus to be created.

3. SAME.—Section 159 of the present Constitution, which provides that

Holzhauer v. City of Newport.

whenever any county, city, etc., "is authorized to contract an indebtedness it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest," etc., requires legislation to make it operative.

4. SAME—UNIFORMITY OF TAXATION.—Sections 171 and 174 of the Constitution which require uniformity of taxation according to value, announce nothing new, but are merely declaratory of what was always the law of taxation in this State, and, therefore, do not forbid local assessments to pay for the improvement of streets or the construction of sewers.

C. L. RAISON, JR., FOR APPELLANT.

1. Where a city is indebted to the extent of twelve per cent. of the assessed value of all the taxable property in the city, no further indebtedness except for ordinary current expenses necessary to carry on the machinery of the government of the city can be incurred until the indebtedness is reduced to ten per cent. of the assessment value of the taxable property in the city; and if it was indebted to the extent of ten per cent. at the time of the adoption of the new Constitution and has such authority under laws in force prior to the adoption of the Constitution, it may incur two per cent. additional indebtedness under these laws, under certain limitations and restrictions; that is, the debt may be created and increased from year to year until the limit of the additional two per cent. is reached, provided the debt incurred each year does not exceed the current revenue and income of the city for the year in which the debt is incurred; and if a debt is desired to be created in any one year beyond the current income and revenue for that year, it can not be done "without the assent of two-thirds of the voters thereof, voting at an election held for that purpose," as provided in section 157 of the Constitution; and any indebtedness created in violation of that section is void. (Constitution, secs. 158, 159, 157, 166, 156; Spillman v. City of Parkersburg, 5 Am. Railroad and Corp. Rep., 370.)

Bonds issued by a city in violation of the provisions of the Constitution as to the limit of indebtedness are void. (Buchanan v. Litchfield, 102 U. S., 278; Litchfield v. Ballou, 114 U. S., 191; Dixon County v. Fields, 111 U. S., 83; Lake County v. Rollins, 130 U. S., 669; Scott v. Davenport, 34 Iowa, 208; Sutliff v. Board of County Commissioners, 147 U. S., 230.)

2. Section 158 of the Constitution was directed to the cities and towns, and was intended to bring them at once under its operation, the Constitution itself fixing the class to which the towns and cities shall belong. (East St. Louis v. United States ex rel Amy., 120 U. S., 600.)

The courts will take notice of the Federal census in matters of the

Holzhauer v. City of Newport.

population of the different towns and cities in the State at any particular date. (McConnel v. Bowdry, 4 Mon., 394; Hart v. Bodley, Hard. 98; Coughton v. Bilbo, 1 Mon., 140.)

3. The provisions of the Constitution limiting the tax rate of cities and towns operated directly upon all cities and towns in the State immediately upon the adoption of the Constitution. (15 Am. & Eng. Enc. of Law, p. 1123; List v. Wheeling, 7 W. Va., 501; East St. Louis v. People, 114. Ill., 655; East St. Louis v. United States *ex rel* Amy., 120 U. S., 798; Norton v. Board of Commissioners, &c., 129 U. S., 479; Scott v. Davenport, 34 Iowa, 208.)

4. Special assessments upon abutting property to pay the cost of street improvements are a violation of the requirements of the Constitution that taxes "shall be uniform," and that property "shall be assessed for taxation at its fair cash value." (Constitution, secs. 171, 172; City of Norfolk, *et al.*, v. Chamberlain, 20 Va. Law Journal, pp 50–89; Weeks, &c., v. Milwaukee, 10 Wis., 258; Hammett v. Philadelphia, 65 Pa. St., 146; Washington Avenue Case, 69 Pa. St., 352; Seely v. Pittsburgh, 82 Pa. St., 360; McBean v. Chandler, 9 Heisk (Tenn.), 349; 2 Dillon on Mun. Corp., sec. 753.)

GEORGE WASHINGTON AND ROOT & ROOT FOR APPELLEE.

1. As the general laws for the government of towns and cities provided for in section 166 of the Constitution, have not yet been enacted, the city of Newport is still operating under its old charter and the amendments thereto.

2. Even conceding that section 166 is in some degree qualified by section 158 of the Constitution, it can not help the case of appellant, as the first proviso of that section expressly authorizes an indebtedness in excess of the limitation prescribed therein, "when the same has been authorized under laws in force prior to the adoption of this Constitution."

But if it be doubtful from the language used, whether the meaning is that the law in force *prior* to the adoption of the Constitution, shall, as to the indebtedness authorized by it, *remain in force*, the debates make it clear that such was the meaning. (Debates of Const. Conv., vol. 2, pp. 2885 and 2886.)

The courts will look to the Debates in construing the Constitution where the language used leaves the meaning in doubt. (Cooley's Const. Limit., ed. 1883, Marg., p. 66.)

3. The limitation of two per cent. referred to in the second proviso of section 158 applies solely to an indebtedness contracted subsequently to the adoption of the Constitution, under charter provisions, and independently of whatever indebtedness may have been contracted in virtue of special enactments prior to the Constitution.

4. Sections 157 and 159 of the Constitution require future legislation to give them effect.

Courts must lean in favor of construction which will render every word operative. (Cooley's Const. Limit., marg. p. 58, ed. of 1885.)

5. Section 171 of the Constitution in requiring that taxes shall be uniform merely puts in express terms what has always heretofore been deemed a cardinal principle of taxation. (Lexington v. McQuillan's heirs, 9 Dana, 517; Pearson v. Zable, 78 Ky., 173; 8 Bush, 513; Cooley's Const. Limit., star page, 495, ed. 1883.)

Local assessments for street improvements do not violate the rule requiring uniformity. (Lexington v. McQuillan's Heirs, 9 Dana, 513; Louisville v. Hyatt, 2 B. M., 177; 78 Ky., 173; Burroughs on Taxation, pp. 459, 460; Cooley's Const. Limit. marg. p. 507; People v. Mayor, &c., of Brooklyn, p. 419; 14 Bush, 21; Maddux v. City of Newport, 12 Ky. Law Rep., 657; Palmyra v. Morton, 25¹ Mo., 593; Dillon on Mun. Corp., sec. 596; 8 Bush, 511; 4 N. Y., 428; Cooley's Const. Limit., top pp. 627, 628, 634, 635.)

The words "tax" and "taxation" in the Constitution do not include the idea of local assessments. (Burroughs on Taxation, pp. 461, 462; Dillon on Mun. Corp., secs. 598, 600, 617, (1 st. ed.); Cooley on Taxation, p. 456; Broadway Baptist Church v. McAtee, &c., 8 Bush, 518; Buffalo City Cemetery Case, 46 N. Y., 506; Patterson v. Society, 24 N. J., 385; Bridgeport v. New York, &c., R. Co., 36 Conn., 255; Emery v. Gas Co., 28 Cal., 345; Street Cases, 20 La. An., 497; Garrett v. St. Louis, 25 Mo., 505; Reeves v. Treasurer of Wood Co., 8 Ohio St., 333; Johnston v. Louisville, 11 Bush, 532; 13 Ky. Law Rep., 387.)

6. There is an element of fairness in local assessments for street improvements. (Municipality v. Dunn, 10 La. An, 57; Philadelphia v. Fryon, 35 Pa. St, 40¹, 404.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

On June 2, 1892, the city council of the city of Newport, Kentucky, acting under and by virtue of the authority conferred on it by an act of the Legislature of Kentucky, entitled "An act to amend the charter of the city of Newport, authorizing the reconstruction of its streets, and to pay for same by an issual of bonds of the city," approved April 24, 1890, passed a resolution providing for the reconstruction of Monmouth street, by grading, curbing, &c., and pav-

ing same with brick.   In September thereafter a con-
tract to do the work was entered into with one Charles
Spinks, in conformity with the terms and requirements
of the act named, and he at once began the recon-
struction of the street under his contract.   About the
same time the city council entered into contract with
Regan and others for the construction of certain sew-
ers in the city, as it was authorized to do under and
by virtue of an act of the Legislature, entitled "An
act to provide for sewerage in the city of Newport,"
approved April 16, 1890.   The sewers were to be built
as provided by the act, the issual of the bonds of the
city in payment therefor, and the collection of the
assessments on the real estate in the respective sewer
districts were to be made as directed by the act, and
these contractors were proceeding to execute their
contracts.

Thereupon the appellant Holtzhauer, a citizen and
tax-payer of the city, owning property on Monmouth
street, and living in one of the sewer districts,
brought this action seeking to enjoin the city from
the further prosecution of reconstructing the streets
or building the sewers, under the provisions of the
acts named, contending that by the present Consti-
tution the authority to increase the indebtedness of
the city to the extent required by the work at hand
had been revoked.

The facts alleged and conceded are in substance—
*first*, that the city has already, and has had for years,
a tax rate of one dollar and sixty-five cents on the
one hundred dollars upon the value of her taxable
property, not including the tax for school purposes;

that these contracts incurred an expense largely in excess of the current income and revenue of the city for the year 1892, after deducting its ordinary or necessary expenses, and that this was·done without the assent of two-thirds of the voters in the city voting to determine whether or not it should be done, no vote being, in fact, taken. *Second*, That the indebtedess of the city at the time of the adoption of the present Constitution, and at the time the contracts in question were entered into, was in excess of ten per centum on the valuation of her taxable property during that time. That the *authorized* indebtedness, if added to the existing debt of the city, exceeded twelve per centum of that valuation, and that the authorized indebtedness was in excess of two per centum thereon. And *third*, that the city at no time provided for the collection of an annual tax sufficient to pay the interest on the indebtedness incurred by these contracts, or created a sinking fund for the payment of the principal thereof.

By reason of the existence of the facts grouped in our *first* enumeration, it is insisted that the proposed issual of bonds and the consequent increase of the tax rate are in violation of section 157 of the Constitution, which reads as follows:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents on the hundred dollars; * * * un-

less it should be necessary to enable such city, town, county or taxing district to pay the interest on, and provide a sinking fund for the extinction of, indebtedness contracted before the adoption of this Constitution. No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

The section immediately preceding this one is the first under the general head of "Municipalities." By its direction the General Assembly shall assign the cities and towns of the Commonwealth to the classes to which they respectively belong, and by a general law provide how towns may be organized, and enact laws for the government of such towns, until the same shall be assigned to one or other of the classes named. By section 166, "all acts of incorporation of cities and towns heretofore granted, and all amendments thereto, * * shall continue in force under this Constitution * · * until such time as the General Assembly shall provide by general laws for the government of towns and cities, and the officers and courts thereof; but not longer than four years from and after the first day of January, 1891, within which time the General Assembly shall provide by general

laws for the government of towns and cities, and the officers and courts thereof, as provided in this Constitution."

From the very nature of the case, this last section is self-operative. It provides for the continuation of existing laws, of acts and amendatory acts of incorporation. There shall come a time, says the section, when the General Assembly shall enact general laws for the government of these towns and cities in conformity with this Constitution. In the meantime their present governmental regulations must remain in force. Their charters and amended charters must for the present suffice.

If section 157 is held to be self-operative, or the law governing towns and cities instantly upon the adoption of the Constitution, there is an irreconcilable conflict between the two sections. Two laws fixing different]rates of taxation can not both obtain at the same time in the same city.

We are required, upon every principle of construction, "to maintain, if possible, every part of the fundamental law." Effect is to be given, if possible, says Cooley, "to the whole instrument, and to every section and clause." There is, so to speak, a formative period in the government of these cities and towns. Until such time as "the General Assembly shall provide by general laws" for their government, which must be within four years from January 1, 1891, the existing laws of these incorporations—their tax-rates included, and methods of raising revenue—must continue in force, if the express letter of the Constitution is to be observed. The contraction of

the indebtedness in question, and the consequent increase of the tax-rate, or a continuation of the same rate for a longer period, were authorized by the Legislative Acts of April, 1890. The manner of its contraction was specifically pointed out. No vote other than that taken was required. Their constitutionality, under the former organic law of the State, was tested in the cases of Maddux v. The City of Newport, and they are as fully in force to-day as when their constitutional validity was upheld by this court in December, 1890. (See cases, *supra*, 12 Ky. Law Rep., 657.) We are of opinion that this section was addressed to the Legislature, indicating the limitations on the powers it shall give the several classes of towns and cities when it shall come to provide for their classification and government by general laws.

The *second* group of facts enumerated above are supposed to bring the case under the prohibitory provisions of section 158 of the Constitution. So far as applicable, it is as follows:

"The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur an indebtedness * * in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum: * * * *Provided*, Any city, town, taxing district or

other municipality, may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution: *And provided further*, If, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding *two per centum*, * * in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district, or other municipality."

It may be admitted that, to the extent that this section provides for a state of case in existence at the time of the adoption of the Constitution, it is applicable to all towns and cities resting under the conditions named. But in express terms the limitation of ten per centum may be exceeded when the proposed indebtedness "*has been authorized under*

*laws in force prior to the adoption of this Consti-
tution.*" There is no limit indicated to this excess.
From the very nature of the case there could be
none.  At least the actual condition of the cities and
towns, with respect to the sums they owed, could
not be affected by the Constitution.  These debts,
however large, and by whatsoever extent they might
in fact exceed the conservative limit imposed under
the Constitution, could not be legislated out of ex-
istence.  They could not be repudiated, or the means
denied whereby they could eventually be paid; and
yet some restriction, some limit, may be imposed,
beyond which even these cities shall not go.  There-
fore, if the limit already has been reached, such city
may not be authorized or permitted to increase its
indebtedness, existing and authorized, in an amount
exceeding two per centum on the value of its taxa-
ble property.  It does not matter that the existing
and authorized liabilities exceed the ten per centum
*and* the two per centum.  This can not be prevented
or remedied, but such indebtedness as may be con-
tracted subsequently to the adoption of the Consti-
tution, and independently of liabilities authorized to
be contracted before that adoption, must not exceed
the two per centum limit.  The "increase of indebt-
edness" meant by this second proviso, is that over
the aggregate indebtedness already in existence or
already authorized under laws then in force.  This
construction necessarily determines the question at
issue, and we do not think that section 159 affects
the case.  It provides that "whenever any county,
city, town, taxing district or other municipality is

authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest, &c." The General Assembly, by general laws yet to be enacted, must see to the imposition of these limitations and restrictions. Future legislation is necessarily implied from the very language of the provision.

It is thought, however, that the method of assessment provided for in the acts in question is in violation of sections 171 and 174 of the Constitution. These sections require uniformity of taxation, and taxation according to value. While they were not in the former Constitution, the principles contained therein have always been recognized as the basis of all taxation. They announce nothing new, but are merely declaratory of what was always the law of taxation in this State. The method of assessment provided by these acts was held to be in accord with the old Constitution in the cases of Maddux v. The City of Newport, *supra*, and we adhere to that opinion.

We are of opinion that contracts for the reconstruction of the streets of Newport, and for the building of the sewers, as provided for by the acts of April, 1890, may lawfully be made; that the plans of assessment proposed are constitutional, and that there can be no question of the legal and constitutional validity of the bonds of the city issued, or to be issued, as authorized by the acts in question.

Judgment affirmed.