## Walsh, et al. v. City of Pineville.

. (Decided March 4, 1913.)

### Appeal from Bell Circuit Court.

1. Municipal Corporations—Reduction of Indebtedness—Increase of Indebtedness—Constitutional Provision.—A city, which ,at the adoption of the Constitution, was indebted beyond the limit pre- scribed by section 158 of the Constitution, having reduced its indebtedness below the constitutional limit, cannot thereafter in- crease the indebtedness beyond the limit provided by the Consti- tution.

2. Municipal Corporations—Indebtedness for School Purposes—Con- stitutional Provision.—An indebtedness for school purposes, whether created before or after the adoption of the Constitution, is to be considered in counting the amount of indebtedness that a city may incur under section 158 of the Constitution.

3. Municipal Corporations—Issue of Bonds by School Board—Rule in Second Class Cities.—The rule which is applied in second class cities in which the school board is a corporation separate and apart from the city; and issues bonds under a vote of the people, cannot be applied in a city of the fourth class to bonds issued by the city although for school purposes.

PATTERSON & INGRAM for appellant.

C. I. DAWSON, J. G. ROLLINS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Pineville is a city of the fourth class. At the time of the adoption of the present Constitution in 1891, the aggregate indebtedness of the city was in excess of 5% of the assessed value of the taxable property in it; the indebtedness at that time being $50,000, all of which has been paid since except about $8,800, and $14,500, the lat- ter sum being now represented by refunding school bonds of date November 10, 1908, those bonds having been is- sued to refund the bonds which had been issued before the Constitution was adopted, the old bonds having fallen due on November 10, 1908, and the debt being then re- funded by the issuance of new bonds maturing in twenty years. The assessed value of the taxable property in the city as of April 1, 1910, was $792,110; the city has not incurred, or attempted to incur any indebtedness to an amount exceeding in any way, the income and revenue provided for the year; but the Board of Education in the

year 1911 requested the city council to call an election and submit to the qualified voters of the city, the question whether the Board should be empowered to incur an indebtedness not to exceed $30,000, for the erection and maintenance of public school buildings in the city, this being less than 5% of the assessed valuation of the taxable property on the basis of the last assessment. Pursuant to this request the Board of Council of the city, on September 4, 1911, enacted an ordinance submitting the question to the qualified voters of the city. The election was regularly held on November 7, 1911; there were 288 votes for the proposition and 13 against it; 65 failed to vote. The Board of Council of the city then passed an ordinance authorizing the issue of $30,000 of bonds to be executed by the city and the Board of Education jointly, pledging the entire revenue of the city available for public school purposes for the payment of the bonds, and providing that from the amount of the total levy authorized by the city for public school purposes, there should be annually collected a levy of twenty-five cents on each $100 of property taxable by the city, which should be known as the school board levy, and should be kept separate and apart to create a fund to pay the interest and provide a sinking fund for the payment of the principal of the bonds. The Board of Education approved the ordinance and ordered its president and secretary to execute the bonds on its behalf. $15,000 of the above bonds have been sold, and the money has been received. The Board of Education and the City of Pineville were proceeding to put upon the market the other $15,000 of bonds when this suit was brought by M. F. Walsh, suing for himself and on behalf of all other citizens and taxpayers of the city, to enjoin the issuing and sale of the bonds on the ground that if these bonds were issued and sold the indebtedness of the city would exceed the limit allowed by section 158 of the constitution. The circuit court sustained a demurrer to the petition, and dismissed it. The plaintiff appeals.

Section 157 of the Constitution provides:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz: * * * for all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; * * * unless it should be necessary to enable such city, town,

county, or taxing district to pay the interest thereon, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution.  No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void.''

It will be observed that, this section regulates the tax rate for other than school purposes, and that no limit is placed by it upon the tax rate that may be levied for school purposes.  But it has been determined that the last clause of the section forbidding the incurring of indebtedness beyond the revenue provided for the year includes indebtedness for school purposes.  (City Council of Richmond v. Powell, 101 Ky., 7; Com. v. L. & N. R. R. Co., 105 Ky., 210; Brown v. Board of Education, 108 Ky., 787.)

Section 158 of the Constitution provides:

''The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum; cities of the third class having a population of less than fifteen thousand, and cities and towns of the fourth class, five per centum; * * *  Provided, Any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under the laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution; And, provided further, If, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to

contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, * * * in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality.''

It will be observed that this section does not except from its operation debts created for school purposes; but includes all indebtedness, subject to two provisos. By the first proviso the city may contract an indebtedness in excess of the limitation prescribed when the same was authorized under the laws in force prior to the adoption of the constitution, or is necessary for the completion of and payment for a public improvement undertaken and not completed or paid for at the adoption of the Constitution. It is clear that this proviso has no application to the case before us; for the indebtedness in contest here was not authorized under laws in force prior to the adoption of the constitution, and is not necessary for the completion of and payment for a public improvement undertaken and not completed or paid for at the time of the adoption of the constitution. The other proviso is in substance that if at the time of the adoption of the constitution, the aggregate indebtedness of the city, including that which it has been or may be authorized to contract, as provided by the section, shall exceed the limit so prescribed, then the city shall not increase its indebtedness in an amount exceeding 2% of its taxable property, until the aggregate of its indebtedness shall have been reduced below the limit prescribed by the section, and thereafter it shall not exceed the limit unless in case of emergency the public health or safety should so require. The indebtedness which the city ''has been or may be authorized to contract'' under this proviso is the indebtedness referred to in the first proviso authorized under laws in force prior to the adoption of the Constitution, or necessary for the completion of and payment for a public improvement undertaken and not completed or paid for; the meaning of the second pro-

viso is that when the aggregate of the existing indebtedness, and that referred to in the first proviso, shall exceed the limit prescribed, the city must not increase its indebtedness in the aggregate in an amount exceeding 2 per cent. of the value of the taxable property therein, until the aggregate of its indebtedness shall have been reduced below the limit fixed in the section; and when the indebtedness is so reduced, the city shall not exceed the limit unless in case of emergency, the public health or safety shall so require. In Holzhauer v. City of Newport, 94 Ky., 406, having under consideration Section 158 of the Constitution and its operation as to the debts authorized before the adoption of the Constitution in a city limited to an indebtedness of ten per cent, the court said:

"These debts, however large, and by whatsoever extent they might in fact exceed the conservative limit imposed under the Constitution, could not be legislated out of existence. They could not be repudiated, or the means denied whereby they could eventually be paid; and yet some restriction, some limit, may be imposed, beyond which even these cities shall not go. Therefore, if the limit already has been reached, such city may not be authorized or permitted to increase its indebtedness existing and authorized, in an amount exceeding two per centum of the value of its taxable property. It does not matter that the existing and authorized liabilities exceed the ten per centum and the two per centum. This can not be prevented or remedied, but such indebtedness as may be contracted subsequently to the adoption of the Constitution, and independently of liabilities authorized to be contracted before that adoption, must not exceed the two per centum limit. The "increase of indebtedness" meant by this second proviso, is that over the aggregate indebtedness already in existence or already authorized under the laws then in force."

Again in city of Ashland v. Culbertson, 103 Ky. 163, the court said:

"This 2 per centum increase as was distinctly held in Holzhauer v. city of Newport, 94 Ky., 406, is permissible independently of the amount of the indebtedness existing when the Constitution was adopted, provided such indebtedness is already in excess of the constitutional limit. "And this provision for such increase may be taken advantage of by any city whose debt was at the limit when the Constitution was adopted, so long

as that indebtedness shall not have been reduced below the limit, and, so long, of course, as any increase of indebtedness after the adoption of the Constitution has not absorbed the two per centum provided for."

(To same effect see Aydelott v. South Louisville, 16 R. 1066; Farson v. Board of Comms., 97 Ky., 119.)

The refunding bonds stand simply in place of the old bonds and the status would not be different if the old bonds were still out. In Bank of Columbia v. Taylor Co., 112 Ky., 250, we said:

"The money was borrowed of appellant to compromise the outstanding bonds of the county which were issued before the adoption of the constitution. It was not a new debt. It was simply a new form of the old debt, which was reduced 50 cents to the dollar in the change of form. The power which is expressly given by the constitution to contract an indebtedness of this kind under laws in force prior to its adoption and authorizing the issue of renewal bonds must be read in connection with section 157, excepting out of the operation of that section a tax levied to pay the interest on indebtedness contracted before the adoption of the Constitution or for the extinction of the debt."

Although the city of Pineville was indebted $50,000, at the adoption of the Constitution, previous to 1911 it had reduced its indebtedness to $23,300, this being composed of the old city bonds amounting to $8,800, and the refunding school bonds, $14,500. When the first installment of $15,000 of the new school bonds was issued this increased the city's indebtedness to $38,300; and if the proposed additional issue is made of $15,000 more bonds, the total of the city's indebtedness will be $53,300, while the taxable property in the city amounts to only $792,110, and 5% of this amount is $39,605.50.

It is insisted for the appellees that $14,500 of the refunding bonds issued to refund the old school debt which was in existence at the adoption of the Constitution are not to be counted, and that therefore the issue of $15,000 more of bonds is not in excess of the Constitutional limit. The circuit court seems to have taken this view, but we cannot concur in it. The city of Pineville having reduced its debt after the adoption of the Constitution below the Constitutional limit, cannot thereafter increase its indebtedness beyond the Constitutional limit, unless in case of emergency the public health or safety

shall so require. By the first clause of the section, exist-
ing indebtedness at the time of the adoption of the Con-
stitution, is expressly to be included in the maximum of
indebtedness allowed, and there is no provision in the
section allowing this old indebtedness to be excluded or
the limit fixed by the Constitution to be exceeded, after
the indebtedness of the city is once brought below the
constitutional limit. The reason for the second proviso
was that cities though indebted beyond the constitu-
tional limit at the adoption of the Constitution, should be
allowed some latitude until their existing indebtedness
was reduced below the Constitutional limit. But after this
was done it was plainly intended that the same rule
should apply to all cities of the same class. The fact that
a city has had a debt which it has paid off constitutes
no reason why it should have a greater latitude in creat-
ing new indebtedness than if the debt had never existed.
All through the section, indebtedness existing at the time
of the adoption of the Constitution is in the minds of the
framers of the section, and it is at no time to be excluded
from the calculation, although an excess of indebtedness
of 2% is allowed under certain limitations, in order that
no hardship might result from putting the section into
operation. While we do not find that the question has
been directly adjudicated by this court heretofore, the
view we have indicated seems the natural and necessary
meaning of the terms employed.

In city of Newport ex parte, 141 Ky., 329, we held that
in cities of the second class, bonds may be issued by the
Board of Education, and that such bonds are not to be
counted as part of the indebtedness of the city, but
that ruling is based upon the ground that the Board of
Education is a distinct corporation from the city, and
that the bonds are the bonds of the Board of Education
and not the bonds of the city. In that opinion it was
pointed out that the same rule would not apply in a city
of the fourth class to bonds issued by the city itself as
in the case before us. In a city of the fourth class the
Board of Education is not a corporation separate and
apart from the municipality as in cities of the second
class.

We therefore conclude that the city is without au-
thority to issue the bonds in question under the facts
stated in the petition, and that the demurrer to it should
have been overruled.

Judgment reversed and cause remanded for further
proceedings consistent herewith.