# Coppin and The City of Covington v. Board of Education of City of Covington.

(Decided October 21, 1913).

## Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Municipal Corporations—Indebtedness—Amount—Determination— Indebtedness of Independent School District—Board of Education. —Bonds issued by the Board of Education of cities of the second class under the authority of Chapter 137 Acts 1912 are obligations of the Board of Education, and the amount thereof is not to be considered in determining whether the city has reached its maximum constitutional debt limit.

2. Municipal Corporations—Board of Education—Issue of Bonds by— Indebtedness.—Bonds issued by the Board of Education of cities of the second class under authority of Chapter 137, Acts 1912, are obligations of the city, and the amount thereof is not to be considered in determining whether the city has reached its maximum constitutional debt limit.

STEPHEN L. BLAKELY, O. H. ROETKEN for appellants.

ROBT. C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

The Board of Education of the city of Covington, being desirous of acquiring a site and erecting a high school building thereon, under the authority of subsection 28, chapter 137, Acts of 1912, certified to the General Council of the city of Covington, the fact that an election should be held submitting to the qualified voters of said city the question as to whether there should be issued school improvement bonds in the sum of $150,000, the proceeds thereof to be used in acquiring a site and erecting a high school building thereon.

The general council of said city of Covington thereupon by an ordinance duly and regularly passed directed the submission of said proposition, at the regular election to be held Nov. 4, 1913; and appellant, J. R. Coppin, as a taxpayer of said city, for himself and the other taxpayers thereof, brought this action to test the validity of said ordinance. The case was prepared and submitted in the court below, where upon consideration thereof, the said ordinance was upheld; and from that judgment, the plaintiff below, Coppin, as well as the city of Covington, has appealed.

It is the contention of appellants that the bonds proposed to be issued, will constitute an indebtedness of the city of Covington; and, that the amount thereof when added to the present indebtedness of the city will exceed the constitutional limit for such city; and that the ordinance is, therefore, invalid. The first is the principal question presented, and if decided adversely to appellant's contention, it is the only question necessary to be decided on this appeal.

In the City of Newport, ex parte, 141 Ky., 329, decided by this court on Dec. 16, 1910, the question presented was whether the then existing indebtedness of the board of education of Newport was to be regarded and treated as an indebtedness of the city of Newport; if so, then the ordinance sought therein to be tested was invalid for the reason that upon that basis of calculation, the said ordinance provided for an indebtedness in excess of the constitutional limit. In that case, this court said:

"But in Gray on Limitations of Taxing Power and Public Indebtedness, section 2148, the rule supported by the weight of authority in other States is said to be that 'where two or more municipal corporations or political bodies are wholly or partly coincident in territory, they are nevertheless regarded as separate bodies for the purpose of constitutional debt limitations, unless the contrary is expressed in the Constitution. * * * In creating the school board an independent corporation the Legislature invested it with certain rights and powers, among them being the power to determine the amount of money necessary to meet the school needs during any one year, and under certain contingencies and conditions to borrow money and pledge the school property to secure it. But this power is not unlimited; for we find that the board may not incur an indebtedness in excess of 2 per cent of the taxable property of the district. If this indebtedness, so incurred, were to be treated as a part of the indebtedness of the city, why the necessity for placing any limitation as to amount? The provision of the Constitution quoted fixes the limit beyond which the city may not go, and if the indebtedness of the school board is to be treated as a part of the indebtedness of the city, and the city should have already reached its constitutional limit, then the power granted to the school board, authorizing it to incur an indebtedness of two per cent, would be a nullity.''

This opinion was delivered with reference to the law governing schools in cities of the second class as it existed prior to the enactment of chapter 137, Acts 1912.

It becomes necessary, therefore, to make some comparison between the former law and the Act of 1912.

Under the former law (Sec. 3219, Kentucky Statutes, 1909) the board of education in cities of the second class was authorized to issue bonds with the assent of a proper number of voters, not exceeding, however, one hundred and fifty thousand dollars; it was authorized to pledge the property purchased and equipped with the proceeds of such bonds, and all other school property, and the revenue of said board, for the payment of the principal and interest of said indebtedness. The board of education was authorized to request the General Council of the city to levy and collect for its use, a tax of not to exceed thirty-five cents on each hundred dollars valuation, for the purpose of maintaining the schools, and a tax of not to exceed ten cents on each hundred dollars valuation for sinking fund purposes; and it was made the duty of said general council upon such request, to make said levy and collection.

The act of 1912 provides that the board of education may, if desirous of raising money for the proper accommodation of the schools, by the purchase of sites and erection of building, and the annual funds from other sources are not sufficient for said purpose, certify to the General Council of Board of Commissioners of the city the fact that an election for an issue of bonds for school improvements shall be held, together with the amount of money desired to be raised, and the purpose for which it is to be used, and that it shall thereupon *be the duty* of the council to adopt an ordinance submitting to the qualified voters of the city the question *whether bonds of the city* shall be issued for the purpose aforesaid.

It further provides that said bonds so issued shall be designated *school improvement bonds;* and that said ordinance shall provide the date and maturity, rate of interest, and total amount of such bonds to be issued as well as all necessary details in reference to the execution and delivery thereof, the denominations, coupons to be annexed, tax to be levied to pay the interest, and a sinking fund to retire such bonds at maturity, and that the assent of the voters having been obtained,

the bonds shall be issued, and when so issued, shall be placed under the control of the board of education.

.The Act also provides that the General Council shall levy and collect, upon request of the board of education, a tax of not to exceed forty cents on the hundred dollars valuation, for school maintenance purposes; and that it shall be the duty of the General Council, in addition to the levy for maintenance of the schools, to levy annually in its tax levy a rate that will raise a sum that shall be sufficient to pay the interest and create a sinking fund for the payment of the said school improvement bonds at maturity. It further provides that said bonds shall be a charge *upon the sinking fund of the city* and it shall be entitled to have the annual tax levied for the purpose of retiring said bonds.

· It is further provided in section 16 of the Act of 1912 that the business director of the board of education shall execute for the board its contracts and obligations *except that bonds issued shall be signed by the president and attested by the business director.*

These are some of the main points of difference between the two acts. In a general way, the Act of 1912 broadens the powers of the board of education, and while the city continues to act as the involuntary agent of the board of education in the levy and collection of the tax for the purpose of maintaining the schools, the board itself under the later act has its own treasurer, and disburses its own funds. Under the former act, the board of education was required to attend to the details of its sinking fund for the retirement of its bonds; under the present act, the city is charged with that duty.

For the city, it is contended that because of the language of the act in reference to the proposition to be submitted to the voter *"whether bonds of the city shall be issued;"* and because the act makes said *school improvement bond* a charge upon the sinking fund of the city; and because of the absence of provision that these bonds shall be secured by lien upon the property of the board of education or that they shall be a charge upon its revenues; that the bonds proposed to be issued will be a liability of the city of Covington; and that, therefore, the ordinance in question is invalid.

Upon a consideration of the whole act, and gathering from it as a whole, the evident intent of the Legislature;

we are of the opinion, that the bonds proposed to be issued will, when so issued, constitute an indebtedness of the board of education, and not of the city of Covington. The board of education initiates the proceedings for the issual thereof; the city acts involuntarily in that respect as the agent of the board; the president and business director of the board of education sign and attest respectively the bonds issued; they are designated *school improvement bonds* and the money derived from the sale thereof is expended solely by the board of education for educational purposes, free from participation on the part of the city. The mere fact that the Act of 1912 provides that the city's sinking fund organization shall administer the sinking fund for the retirement of these bonds, is a matter of convenience only, and does not affect the ultimate liability of the board of education therefor; and, as the city administers the sinking fund through which these bonds shall be retired, it is eminently proper that said bonds should be made a charge upon that sinking fund; otherwise, revenues belonging to the board of education, but in the hands of the city for the purpose of retiring these bonds, might be lost to it. It is provided in the act of 1912 that the city "shall have the tax that may be levied, to provide a sinking fund for these bonds;" if that tax were levied to meet an obligation of the city itself the necessity of this provision would not be obvious.

It has been the uniform ruling of this court that an indebtedness created for school purposes, in cities of the second class is separate and distinct from that of any other municipal corporation or political body; and that in reckoning the indebtedness thereof, the indebtedness of a school corporation wholly or partly within the limits of such municipal corporation or political body, is not to be considered.

In the enactment of the statute under consideration, the Legislature, it will be presumed, proceeded with knowledge of such interpretation; and this Court will not construe language in the act which might seem obscure, in such a way as to lead to an absurd conclusion. This court will not say that it was the intent of the Legislature to authorize the board of education to issue bonds with the assent of the taxpayers and to expend the proceeds for educational purposes, and yet hold that it was the intent of the Legislature to say that such bonds should not be liabilities of the board of education,

but of the city itself, when the city, as such, has no voluntary participation, either in the issue or sale thereof, or in the expenditure of the proceeds derived therefrom.

The judgment of the lower court being in conformity with these views, is, therefore, affirmed.

Whole court sitting, all concurring.