## Southern Bitulithic Company v. DeTreville, et al.

(Decided December 19, 1913).

### Appeal from Christian Circuit Court.

1.  Municipal Corporations—Indebtedness—Constitutional Provision. —An indebtedness created in a previous year and remaining unpaid must be counted in computing the indebtedness which the city may incur in a subsequent year under section 157 of the Constitution forbidding a municipality to become indebted in any manner in any year beyond the income and revenue provided for the year without the assent of two-thirds of the voters thereof voting in an election to be held for that purpose.

2.  Municipal Corporations—Indebtedness for School Purposes.—An indebtedness for school purposes in a city of the fourth class is a debt of the city within that provision of the constitution.

3.  Municipal Corporations—When and to the Extent Void.—An indebtedness beyond the Constitutional limit is void to the extent of such excess.

4.  Municipal Corporations—Indebtedness of.—A municipality having properly created a debt cannot defeat the obligation by failing to make the proper levy.

5.  Municipal Corporations—Presumption That Debt is Within Constitutional Limit.—A debt will be presumed to be within the constitutional limit unless the contrary appear.

6.  Municipal Corporations—Creation of Indebtedness—Vote of People.—A municipality may not without a vote of the people create in one year a debt to be thereafter paid in subsequent years out

of the income and revenue for such subsequent years, for the payment of which no provision can be made out of the income and revenue of that year.

HUNTER WOOD & SON and CAMPBELL PILCHER for appellant.

SOUTHALL & SOUTHALL and W. H. SOUTHALL, JR., for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

The city of Hopkinsville entered into a written contract with the Southern Bitulithic Company on July 3, 1913, by which it agreed to pay the company $8,500 for paving certain parts of the publicways of the city. George DeTreville brought this suit to enjoin the execution of the contract on the ground that by the contract an indebtedness was created in excess of the income and revenue provided for the year; and that the contract was void under section 157 of the Constitution. On the trial of the action the following agreed statement of facts was filed:

"That the following items of the income and resources of the city of Hopkinsville for the year 1913 are correct and to be estimated in determining the question whether or not the city of Hopkinsville exceeded its resources when it entered into the contract heretofore referred to with the Southern Bitulithic Company on the 3rd day of July, 1913:

| | |
|---|---:|
| Amount of taxes on real and personal property and from franchises assessed at $4,430,879.00 | $44,308.79 |
| 2,510 polls at $1.50 each per poll | 3,766.00 |
| Amount collected from delinquent taxes for the year 1912 from Jan. 1st, 1913, to July 3rd, 1913 | 4,778.88 |
| Amount due on delinquent taxes for the year 1912 that is collectable | 2,771.64 |
| Amount collected from license fees from Jan. 1st, 1913, to July 3rd, 1913 | 21,334.37 |
| Amount collected from fines, dog taxes and pounds, fees from Jan. 1st to July 3rd, 1913 | 2,094.00 |
| Amount cash collected from Jan. 1st, 1913, to July 3rd, 1913, from cemetery | 1,222.63 |
| Making total amount of resources for the said City of Hopkinsville for the year 1913 | $80,275.31 |

"It is agreed between the parties hereto that on the 3rd day of July, 1913, the City of Hopkinsville owed the following debts which were created by contract which should be and are to be estimated in determining the question whether or not the City of Hopkinsville exceeded the resources and income of the city for the year 1913, to-wit:

Note due Planters Bank and Trust Co.................$19,971.78
Fixed salaries of officers and employes................. 20,631.72
On contracts with the Hopkinsville Water Co.  5,100.00
On contract with Kentucky Public Service
    Company for street lighting for the year
    1913 ............................................................................  7,200.00
Amount due on contracts for sewers..................... 3,647.50
Amount of interest on $66,000 school bonds......... 1,300.00

Making the total amount of indebtedness of
    the City of Hopkinsville on July 3, 1913......$57,851.00

"It is further agreed between the parties hereto that on the 1st day of March, 1910, the City Council of the City of Hopkinsville adopted an ordinance under which said city issued bonds to the amount of $40,000.00, running a term of twenty years and bearing five per cent interest for the purpose of erecting a high school building in the city of Hopkinsville, which bonds were dated April 1st, 1910, and that said bonds were issued by the city without having submitted the question whether or not they should be issued to a vote of the people, and that said bonds are payable out of the general fund of the city of Hopkinsville, and that there were certain conditions in the ordinance under which said bonds were issued, all of which are fully set out and described in a copy of said ordinance, which is filed herewith and made a part of this agreed statement of facts, marked '2'.

"It is further agreed between the parties hereto that on the 10th day of November, 1911, the City Council of City of Hopkinsville adopted an ordinance under which said city issued bonds for the amount of $30,000.00, running a term of twenty years and bearing five per cent interest for the purpose of erecting a high school building in the City of Hopkinsville, which bonds were dated December 1st, 1911, and that said bonds were issued by the city without having submitted the question whether or not they should be issued to a vote of the people, and that said bonds are payable out of the gen-

eral fund of the City of Hopkinsville, and that there were certain conditions in the ordinance under which said bonds were issued, all of which are fully set out and described in a copy of said ordinance, which is filed herewith, and made a part of this agreed statement of facts, marked '3'.

"It is further agreed that on July 3rd, 1913, $66,000 of the bonds issued by the City of Hopkinsville as hereinbefore stated under ordinance adopted March 10th, 1910, and November 10th, 1911, were still outstanding and owing by the City of Hopkinsville on the 3rd day of July, 1913. And it is contended by the plaintiff that the said sum of $66,000 represented by the $66,000 of High School bonds hereinbefore referred to should be added to the sums hereinbefore agreed on as indebtedness of the City of Hopkinsville in determining the question whether the City of Hopkinsville exceeded the Constitutional limit and exceeded its income and resources for the year 1913 when it entered into the contract with the Southern Bitulithic Company on July 3rd, 1913; and it is contended, on the other hand, by the Southern Bitulithic Company that the $66,000 indebtedness created by the issuance of the High School bonds of that amount, which remained unpaid on July 3rd, 1913, and which were issued prior to the year 1913, can not properly or legally be included in an estimate of the indebtedness of the City of Hopkinsville on July 3rd, 1913, for the purpose of determining whether the City of Hopkinsville exceeded its resources for the year 1913 when it entered into the contract with the Southern Bitulithic Company, on July 3rd, 1913."

Hopkinsville has a population less than ten thousand and is a city of the fourth class.

Sections 157, 158 and 159 of the Constitution, among other things, provide:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not at any time exceed the following rates upon the value of the taxable property therein, viz: * * * * * for all towns or cities having (a population) less than ten thousand, seventy-five cents on the hundred dollars, * * * * * No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year the income and revenue provided for such year,

without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. (Section 157.)

"The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz: *  *  *  *  * cities and towns of the fourth class, five per centum, *  *  *" (Section 158.)

"Whenever any city, town, county, taxing district, or other municipality is authorized to contract an indebtedness it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same." (Section 159.)

The circuit court held the contract made by the city with the Bitulithic Company void on the ground that the city had incurred an indebtedness in excess of the income and revenue provided for the year. The city appeals.

It will be observed that while it is stipulated in the agreed facts that the High School bonds were issued without a vote of the people, it is not stipulated that in issuing either of these sets of bonds the council created or did not create an indebtedness in excess of the income and revenue provided for the year; and the case seems to have been practiced upon the ground that nothing appearing on this subject, the court would presume that the council did its duty and that the school bonds were valid. This seems to be the rule as heretofore announced by the court. (Morris v. Hoagland, 116 S. W., 684; City of Louisville v. Gosnell, 22 R., 1524; City of Frankfort v. Morgan, 33 R., 297.) We shall dispose of the case upon this assumption. The question to be determined is, must the $66,000 of outstanding school bonds, issued without a vote of the people, be considered in determining whether the city has incurred an indebtedness in excess of the income and revenue pro-

vided for the year. The rule is well settled that an obligation in excess of the income and revenue provided for the year is a violation of the Constitution, although it is made payable in future years. (Beard v. Hopkinsville, 95 Ky., 239; City of Covington v. McKenna, 99 Ky., 508; Ramsey v. City of Shelbyville, 119 Ky., 180, and cases cited.) The rule is also well settled that when a municipality has created an indebtedness which is not in excess of the amount which it may raise under the constitutional limit of taxation, it cannot defeat the indebtedness by failing to make the necessary levy, and may be required to make the necessary levy within the constitutional limits. (City of Providence v. Providence Electric Light Co., 122 Ky., 237; Burkhart v. Vine Grove Common School District, 26 R., 262; Trustees Common School District v. Kane, 27 R., 983; Lawrence Co. v. Lawrence Fiscal Court, 130 Ky., 587.) But the precise question that arises here does not seem to have been before the court in any previous case. It is earnestly insisted for appellant that each year the municipality may become indebted without a vote of the people to an amount not exceeding the income and revenue provided for that year, and that in determining the amount of indebtedness only the indebtedness created in that year is to be counted. It is insisted that in section 158 the words used are "incur indebtedness to an amount including existing indebtedness in the aggregate exceeding," etc.; and that the words "including existing indebtedness" and the words "in the aggregate" are not contained in section 157. It is urged that this shows that the aggregate of indebtedness was not to be considered under section 157, but only the indebtedness incurred in the year in question. On the other hand, it is insisted that to adopt this construction of the Constitution would be to make it unnecessary for the municipal authorities ever to take a vote of the people and that they could create from year to year indebtedness without taking a vote of the people until they had reached the limit prescribed in section 158. The decision of the question turns on the proper construction of these two sections.

It will be observed that in section 157 the first clause limits the rate of taxation that may be levied. The last clause limits the power of the municipality "to incur indebtedness in any manner or for any purpose to an

amount exceeding in any year the income and revenue provided for the year" without the assent of the people. Both parts of the section must be looked to in determining its proper meaning. A limitation upon the rate of taxation would have been of little value if debts without limit might be created. The purpose of the section as a whole was, first, to limit the rate of taxation, and, second, to require the municipality to live within its means. The words "to become indebted in any manner or for any purpose" are equally as broad as the words used in section 158; for if a municipality in any year is already in debt $5,000, and creates another debt of $5,000, it will "become indebted in the sum of $10,-000." The words "in any manner" show that it was intended that the municipality should under no circumstances become indebted beyond the limits fixed. To allow the municipal authorities in each year to create an indebtedness up to the income and revenue provided for the year, regardless of previous outstanding indebtedness created in former years, would be to defeat the plain purpose of the section in limiting the rate of taxation, and in limiting the power of the municipality to become indebted in any manner or for any purpose beyond the income and revenue for the year; for under such a construction the limitations of the section as to the creating of indebtedness by a vote of the people would be practically useless. We did not lay down a different rule in Knipper v. City of Covington, 109 Ky., 187, or in Lawrence Co. v. Lawrence Fiscal Court, 130 Ky., 587. In the first case, the question presented was as to the power of a municipality, without a vote of the people, to become indebted in excess of the income and revenue provided for the year in case of emergency the public health or safety should so require, as provided in section 158 of the Constitution, and it was held that the indebtedness could not be created without a vote of the people although in a case of emergency; and that this limitation found in section 158 only applied to the amount of indebtedness the municipality might incur, and did not apply to the limitations prescribed in section 157. In the other case, it was held that the income and revenue of a year includes assets of the municipality which are reasonably collectable, and which in ordinary events may be relied on as equivalent to cash, and that under the facts there shown, the munic-

ipal authorities had a right to assume that certain revenues which had not been collected would be available. It is true the court said in that opinion that it is not necessary to the validity of a municipal indebtedness that the municipality should have made provision for its payment, but this must be read in connection with the subsequent part of the opinion, in which the court showed what it meant. Section 4281t Ky. Stats., subsections 3, 4, and 5 provide:

"All money, bonds and securities belonging to any separate fund, or sinking fund, of any county, city or town, shall be kept in a separate account, and where said fund is that of any county, a semi-annual statement thereof upon dates fixed by the fiscal court shall be made to said court by the treasurer, commissioners or custodian of said fund; and where said fund is that of any city or town, a semi-annual statement thereof shall be made to the common or general council of said city, or the board of trustees of said town at its first regular meeting in the months of January and July of each year by the treasurer, commissioners or custodian of said fund." (Subsection 3.)

"Neither the fiscal court of any county, nor the common or general council of any city, nor the board of trustees of any town, shall expend any money in excess of the amount annually levied and collected for that year by such county, city, or town, or levied, collected, or appropriated for any special purpose; and the fiscal court of any county, and the common or general council of any city, and the board of trustees of any town, shall not expend nor suffer, nor permit or authorize to be expended, any money or tax levied and collected for any one purpose to any other purpose than that specified in the order, resolution, or ordinance under which the same is levied, imposed and collected. Any member of the fiscal court of any county, or of the common or general council of any city, or of the board of trustees of any town, who shall knowingly vote for any appropriation of money, or for the making of any contract in violation of this act, or any officer of the county, city, or town who shall knowingly do any act to impose upon the county, city or town any pecuniary liability in excess of the authority in this act limited, shall be guilty of a misdemeanor, and, upon conviction, be punished by fine of not less than one hundred nor more than five hun-

dred dollars, or imprisoned in the county jail not less than one month nor more than twelve months, or both so fined and imprisoned.  (Subsection 4.)

"Where the special object or purpose for which a tax was levied and collected has been accomplished, completed and finished the mount remaining in said special fund, if any, shall pass to and become a part of the general revenue fund of the county, city or town."  (Subsection 5.)

This statute was enacted the better to enforce section 180 of the Constitution:

"Every act enacted by the General Assembly, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

Section 180 of the Constitution must be borne in mind in determining the meaning of section 157.  To illustrate:  If a municipality in one year creates a debt and levies a tax to pay it, but the tax is not all collected, and so a part of the debt is left unpaid, this fund when collected in the following year must be applied to the payment of this debt, and should not be considered in computing the income and revenue of the year unless the unpaid debt is also included in the estimate of the liabilities.  A creditor is not defeated in the collection of a debt that the council had the legal right to create merely because the tax levied is not collected, or the council misapplies the money that should have been paid to him.  Still the debt remains and must be considered in determining the amount of indebtedness that may be incurred in the succeeding year, and each following year until it is paid.  If the school debt was legally created in 1910 and 1911, the part unpaid in those years must be counted as a debt in each succeeding year until the debt is paid.  No one interested in that debt is a party to this proceeding, and no facts being shown to establish the invalidity of the debt, we cannot assume its invalidity.  A debt for school purposes is within the constitutional inhibition no less than a debt for other purposes.  (City Council of Richmond v. Powell, 101 Ky., 7; Com. v. L. & N. R. R. Co., 105 Ky., 206; Brown v. Board of Education, 108 Ky., 783.)  Bonds issued by

a city of the fourth class for school purposes are a debt of the city and must be included in computing its indebtedness; (City Council of Richmond v. Powell, 101 Ky., 7; Walsh v. City of Pineville, 152 Ky., 556); although a different rule applies in cities of the second class. (City of Newport, Ex Parte, 141 Ky., 329; Coppin v. Board of Education, 155 Ky., 387.)

Where a debt has been created with the assent of two-thirds of the voters of the municipality voting at an election held for that purpose, such debt is not to be computed in determining the amount of indebtedness which the municipal authorities may incur during any year. Such a debt must be provided for as required in section 159 of the Constitution with the limitation that the total tax rate does not exceed the maximum rate allowed in section 157 and will cut down to that extent the revenue available for other purposes.

Summing up the matter and reading the sections of the Constitution referred to together we conclude:

1.  In any year all the outstanding valid indebtedness of the municipality not created with the assent of two-thirds of the voters thereof, must be taken into consideration in determining whether in that year the municipality becomes indebted in any manner or for any purpose to an amount exceeding the income and revenue provided for the year.

2.  When the municipality has created an indebtedness and has power under the Constitution to levy a sufficient tax to pay the debt so that its indebtedness will not exceed the income and revenue provided for the year, it may not defeat the debt by failing to levy the proper tax, or by diverting the fund to other purposes.

3.  Any indebtedness created by the municipal authorities beyond the limits prescribed is void, to the extent of such excess.

4.  A municipality may have income from other sources beside the revenue provided for the year by taxation, and it will be presumed in the absence of a showing to the contrary, that the officers did their duty.

5.  It is not contemplated by the Constitution that a municipality shall without a vote of the people create in one year a debt to be thereafter paid in subsequent years, and for the payment of which no provision can be made out of the income and revenue provided for the year in which the indebtedness is created.

When we add to the admitted debt of the city, $57,851, the amount of the school bonds, $66,000, we have an aggregate of $123,851, or much more than the admitted assets, $80,275.31; and if we add to this certain disputed assets which appellant insists should be counted, it would not change the result. We, therefore, conclude that the city had become indebted in an amount exceeding the income and revenue provided for the year on July 3, 1913, when the contract in question was made, and that the circuit court properly held the contract void.

Judgment affirmed.