# Jones, Mayor, et al. v. Board of Education of Bowling Green.

(Decided February 11, 1921.)

## Appeal from Warren Circuit Court.

1.  Municipal Corporations—Indebtedness—Levy.—In estimating the indebtedness a municipality or taxing district may incur under section 158 of the Constitution, expenses for the current year are to be excluded upon the presumption they will be taken care of out of the tax levy for the year, but it can not be assumed that notes to a bank were given or the proceeds used for current expenses simply because they were executed and fall due within the current fiscal year.

2.  Municipal Corporations—Indebtedness.—In such an estimate indebtedness created before the adoption of the Constitution must be included after the total outstanding indebtedness once has been reduced below the prescribed limit, except in certain emergencies.

3.  Municipal Corporations—Indebtedness—School Bonds.—In cities of the third class the law prior to the enactment of chapter 53 of 1920 Session Acts bonds issued for school purposes are debts of the city and must be included in determining whether its constitutional limit of indebtedness has been exceeded.

N. P. SIMS for appellants.

T. W. & R. C. P. THOMAS and J. FRANKLIN CORN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

By this action the Board of Education of Bowling Green seeks by mandamus to compel the mayor and city council to issue and sell $60,000.00 of bonds, and deliver the proceeds of the sale to it to be expended in the erection of a new high school building and in repairing other school buildings in the city.

The defendants admit that the issuance and sale of the proposed bonds have been duly and regularly authorized by ordinance and more than two-thirds of the legal voters of the city, but insist that this indebtedness if incurred will make the total indebtedness of the city exceed the constitutional limit, and for this reason is illegal.

Bowling Green is a city of the third class with a population of more than ten but less than fifteen thousand, and therefore by section 158 of the Constitution is forbidden to incur an indebtedness in excess of five per centum of the value of its taxable property as estimated

by the last assessment but one next before the indebtedness is incurred.

Assuming, as have counsel for the parties and as was done by the trial court, that the proper assessment to be considered in this action for mandamus filed February 6, 1920, although the election authorizing the indebtedness was held in November, 1919, is the one made as of January 10, 1919, which aggregated $5,133,891.00, it results the limit of the indebtedness for the city is $256,694.55 so far as this action is concerned.

It is agreed the outstanding indebtedness of the city to be considered is as follows:

| | |
|---|---:|
| Bond issues, including $19,000, issued before the adoption of the present Constitution | $183,000.00 |
| Floating debt at the beginning of the current fiscal year | 40,078.66 |
| Short term notes executed and due within the current fiscal year | 27,553.02 |
| Lighting contract for current fiscal year | 5,200.00 |
| Total | $255,831.68 |

Apparently therefore the proposed bond issue of $60,-000.00 would be almost wholly in excess of the constitutional limit.

But it is contended by counsel for plaintiff that there must be excluded from the above list of debts in applying section 158 of the Constitution the following:

| | |
|---|---:|
| Bonds issued before the adoption of the present constitution | $19,000.00 |
| Short term notes | 27,553.02 |
| Lighting contract for current year | 5,200.00 |
| | $51,753.02 |

Even if this were true the proposed bond issue would exceed the constitutional limit by $7,384.11. But as a matter of fact the only deduction from the total listed indebtedness permissible in the present condition of the record is the lighting contract obligations for the current year, amounting to $5,200.00, which we will presume can and will be met out of the levy for current expenses, O'Bryan v. City of Owensboro, 24 R. 469; 68 S. W. 858; City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040.

We can not indulge this same presumption, however, with reference to the short term notes aggregating $27,-553.02 as we are asked to do simply because they were executed and fall due within the current year and without knowing the purposes for which they were executed. For all that we know about them they may be but renewals of long outstanding obligations, and we can not assume they represent current expenditures or will, or can, be taken care of out of taxes levied for the current year. Nor can the $19,000.00 bonds issued before the adoption of the present Constitution be excluded from consideration, simply because of such prior issue, since under the second provision of section 158 all prior indebtedness must be included after the total outstanding indebtedness once has been reduced below the prescribed limit, as is the case here, except in certain emergencies with which we are not now concerned. Walsh v. City of Pineville, 152 Ky. 556, 153 S. W. 1002.

Hence the proposed bonds, if obligations of the city, will increase its indebtedness beyond the limit by $53,-937.13, and the judgment requiring appellants to issue and sell same is erroneous and must be reversed.

It is contended, however, that these bonds are not a debt of the city, but with this contention we are unable to agree.

We have held that boards of education in cities of the second class are distinct corporations with independent powers to tax and issue bonds for school purposes, and that bonds issued by such school boards are not debts of the city, although the school district and city are coterminous, and although the taxing power of the school board is exercised through the instrumentality of the city council. Ex parte, City of Newport, 141 Ky. 329, 132 S. W. 580; Coppin v. Board of Education City of Covington, 155 Ky. 387, 159 S. W. 937. We also held in Board of Education City of Bowling Green v. Townsend, 140 Ky. 248, 130 S. W. 1105, that the board of education in a city of the third class is a corporation separate and apart from the municipality, with power to control the tax rate for school purposes and to compel the city council to levy a tax sufficient to meet its demands. Upon authority of this latter case we are asked to apply to cities of the third class the same rule applied in the other two cases cited above to cities of the second class with reference to bonds issued for school purposes and hold that they are not

debts of the city. But counsel overlook a most important difference in the two cases.

Although the boards of education in both second and third class cities are independent corporations and have the same power to control an annual tax levy for school purposes and compel the city council to effectuate their will with reference thereto, the school boards in second class cities have power to and do issue their own bonds, whereas in cities of the third class the school boards have no such power and only the municipalities are given power to issue bonds for any purpose. Why the legislature should have made this difference we do not know, but having clearly made it we have no power to declare that bonds which only the city is permitted to and does issue are not its obligations, but are rather the obligations of a separate and distinct corporation which is denied the power to and does not execute them.

In considering this same question with reference to cities of the fourth class where the boards of education are not permitted to issue bonds but are created separate bodies politic in practically the same language as such boards in cities of the third class we held in Walsh v. City of Pineville, *supra,* that the bonds issued by the city for school purposes were debts of the city and to be included in estimating its indebtedness under section 158 of the Constitution.

So, too, must we hold here even if the legislature since this action was filed has conferred upon boards of education in cities of the third class the same power to issue bonds as in cities of the second class, which seems to have been done by chapter 53 of the 1920 Session Acts, since that act if it does have that effect and if it were available in this action, which does not seem possible, confers upon the school board itself the power to do what it seeks by mandamus to compel the city council to do for it.

In other words if the city only can issue bonds for school purposes they are obligations of the city even if the school board is a separate and distinct corporation, but if the school board is a separate corporation and has power as such to issue bonds then the bonds issued by it are its own obligations and not the city's.

Wherefore the judgment is reversed with directions to dismiss the petition.