## Board of Education of City of Bowling Green v. Townsend, Mayor, et. al.

(Decided October 13, 1910).

### Appeal from Warren Circuit Court.

Schools and School Districts—City Schools—Board of Education—Authority to Levy Tax.—The Legislature of Kentucky by placing the public schools of third class cities in the hands of boards, did not mean that either the city, the general council, or the courts should control them; it meant to make the boards of education entirely independent. To that end it made it the duty of the general council to levy a tax sufficient to meet the boards' demands, not to exceed the limits prescribed by law.

T. W. & R. C. P. THOMAS for appellant.

GRIDER & HARLIN and W. W. MANSFIELD for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Bowling Green is a city of the third class. By its charter the control and management of the public schools and the property and funds thereunto belonging are vested in the board of education. (Ky. Stats., sec.

3462.)   Said board is given full power and authority to employ the necessary superintendent, teachers and other officers and employes, to regulate and fix their terms, duties and compensation; it is also given power to purchase buildings or rent any grounds or buildings necessary or convenient for public school purposes, and to make the necessary contracts to that end.   It is made the duty of said board to provide and maintain out of the funds levied or otherwise collected for that purpose, suitable buildings, teachers and other employes sufficient for the education of all the children of the city between six and twenty years of age.   (Ky. Stats., secs. 3462, 3465 and 3470.)

Section 3469, Ky. Stats., is as follows: "Said board shall, within thirty days prior to the time prescribed for the levy to be made in the charter of cities of the third class, approximately ascertain the amount of money necessary to be used to defray the expenses of maintaining the schools, improving or constructing buildings, etc., thereof, and any liquidation of the liabilities during the current fiscal year, and report the same, together with the estimated amount to be received from the common school fund of the state, interest on bonds, endowments, etc., to the city auditor or clerk, who shall thereupon report the same to the general council, and said general council shall make the necessary levy, and collect the tax to provide suitable school buildings, and to defray the general expenses necessary for school purposes: Provided, that the levy for any one year shall not exceed fifty cents on each one hundred dollars of value of taxable property in the city as returned by the board of equalization.   Said tax shall be paid to the board or authorized agent of the same as fast as collected."

In pursuance of the above section, appellant, the board of education of the city of Bowling Green, ascertained that $32,153 was the amount of money necessary to be used to defray the expenses of maintaining the schools, improving and constructing buildings, etc., thereof, and any liquidation of its liabilities during the current fiscal year.   Of this amount it estimated that it would receive from the state and other sources the sum of $9,400, leaving to be raised by the city of Bowling Green $22,753.   This sum was demanded by appellant of the mayor and general council of the city.   To raise this sum the general council levied a poll tax of one dollar upon each male citizen, and an ad valorem tax of thirty-one

cents on each one hundred dollars of taxable property. The assessable value of all the taxable property in the city of Bowling Green is $4,388,386. A tax of thirty-one cents on this amount would realize $13,195.88. Adding to this amount the sum which it is claimed would be realized from the poll-tax, to-wit, $2,000, the total levy for school purposes for the fiscal year was $15,195.88.

Charging that the sum fixed by it was necessary to defray the expenses of maintaining the schools, improving or constructing buildings, etc., and that the tax levied by the general council for school purposes was wholly insufficient to meet its requirements, the board of education instituted this action against appellees, Townsend and others, as mayor and members of the general council of the city of Bowling Green, for the purpose of compelling them to make a sufficient levy. Appellees' demurrers were overruled. They then filed an answer. The first paragraph of the answer admits the request and demand of appellant, but denies that the sum demanded would be required to conduct the schools for the current year; denies that it is the duty of the council to make the levy, and further denies that a levy of thirty-one cents was inadequate. In paragraph two, appellees allege that the demand of appellant was wholly unwarranted by the condition of the schools, and was an unlawful and arbitrary exercise of power and abuse of discretion. In paragraph three, it is charged that, in addition to the thirty-one cents ad valorem tax, there had been appropriated one dollar of each poll tax levied in the city for the current year for school purposes, which would amount to $2,000; that the city of Bowling Green was providing the public schools with free water from its own water plant, and intended to construct a large amount of concrete sidewalks around the public school buildings, which would cost approximately $250; all of which, together with the poll tax it was alleged would amount to $————. In paragraph four, appellees attack in general terms the employment of extra teachers, the alleged increase of salaries of teachers, the employment of a principal, the purchase of stationery, and certain vacation expenses, and charge that all these expenditures were unjust and an abuse of discretion vested in appellant. In paragraph five, it is charged that the city of Bowling Green had very recently been forced to expend large sums of money to install many needed public improvements, and to make many repairs to those

already in use, in the way of lighting and water machinery, and that in order to meet these requirements it was absolutely necessary to levy the full amount of ad valorem tax allowed for municipal purposes, and because of this fact the property owners of the city of Bowling Green were sorely oppressed with the burden of taxation; that these expenditures were necessary to protect the property, health and lives of the citizens; that the city had never levied a tax in excess of thirty-one cents on each one hundred dollars; that this sum was ample and sufficient for the proper conduct of the schools, and that the amount demanded by appellant for the benefit of the schools was extortionate, oppressive and wholly unnecessary. To each paragraph of the foregoing answer, appellant demurred. The demurrer was overruled and appellant's petition dismissed. From that judgment this appeal is prosecuted.

As it is admitted that the tax levied by the general council is wholly insufficient to raise the amount demanded by appellant, the question submitted for our determination is whether or not, when the board of education of cities of the third class has estimated the expenses of the public schools for the current year at a certain amount, and after deducting from that amount the sums which it will receive from the state and other sources, demands that the general council levy a tax sufficient to raise the balance, the general council can refuse to levy a sufficient tax because in its judgment the board has employed more teachers than are necessary, or has fixed salaries at a higher price than necessary, or in the opinion of the members of the general council the condition of the schools does not require the expenditures fixed by the board, or the expenditures are extortionate or excessive.

Prior to the passage of the various acts creating boards of education in the different classes of cities, the schools were under the control of the general councils of those cities. Under that system, it was found that the general councils would expend out of their income large sums for purposes which they deemed the most important, and would turn over the schools whatever happened to be left. The General Assembly, appreciating the fact that a self-governing people must be enlightened and patriotic in order to be capable of self-government, and that the public school is the most potent means by which to prepare the people to solve the problems of govern-

ment, decided to place the schools under the management of boards that would be entirely independent of those having charge of the other municipal departments. The Legislature had in view a system of schools where teachers would be employed because of character and merit and which would be free from the polluting hand of partisan politics or of the equally polluting hand of him who would use the schools as a haven of refuge for an unfortunate or incompetent relative or friend, or as a charitable institution to take care of the poor of the community. Having placed the management and control of the schools in the hands of such boards; having given them the power to employ teachers, fix the salaries, provide suitable buildings, etc.; having made it their duty to provide the buildings and teachers sufficient for the education of all children of the city between six and twenty years of age, it would certainly be an anomalous condition if the law intended that it should be dependent for its resources to carry out its contracts upon the whims or caprice of the general council, whose duty the law made it to make the necessary levy. Such a condition of affairs was not contemplated by the Legislature. It meant to make the boards of education entirely independent. To that end it made it the duty of the general council to levy a tax sufficient to meet the board's demands, not exceeding, however, the limits prescribed by law. Where proper demand is made within the limits prescribed by law, the council will not be permitted to refuse to comply with the board's demands, unless it can show that the members of the board acted corruptly or in bad faith, or that they embraced in their expenditures items not authorized by law. That in their opinion the demands of the board are excessive or extortionate, is not sufficient. If the contention of council for appellees were sound, we would have the courts passing on the question of the sufficiency of the number of teachers, the amount of salaries paid, etc. The legislature did not mean that either the general council of the cities or the courts should determine these questions; they were left solely to the boards of education which were created for that purpose. (City of Owensboro v. Board of Trustees of Owensboro Public Schools, 10 Ky. Law Rep. 40; Prowse v. Board of Education of Christian County, 120 S. W. 307: Fiscal Court of Logan County, et al. v. Board of Education of Logan County, 127 S. W. 527.) There is nothing in the cases of Board of Education v. General

Council, City of Covington, 45 S. W. 1045, Board of Education of City of Newport v. Nelson, et al., 58 S. W. 700, and City of Lexington v. Board of Education, 25 Ky. Law Rep. 1663, that conflicts with the doctrine herein announced. The opinion in each of those cases was based upon the state of facts developed by the record, and recognized the mandatory character of the statutes involved.

As it is admitted that the ad valorem tax levied for school purposes will amount to only $13,195.88, the parties may agree, upon the return of the case, upon the amount which will be realized from the poll tax, or the court will hear proof upon that point. This amount the court will add to the $13,195.88. He will then enter an order requiring appellees to levy a tax sufficient to raise the difference between this sum and the amount asked by the board of education, the whole levy for school purposes, however, not to exceed fifty cents on each one hundred dollars of taxable property, as provided by the statute.

Judgment reversed and cause remanded for proceedings consistent with this opinion.