## Board of Education of Newport v. City of Newport.

(Decided February 13, 1917.)

### Appeal from Campbell Circuit Court.

1. Schools and School Districts—Taxation—School Taxes—Board of Education.—It is the duty of the board of education having charge of the public school system in cities in requesting the city council to levy taxes for school purposes to include in its report resources which it has on hand, and if it does not the city council may refuse to levy the tax demanded and make only such levy as when added to the resources will make the amount requested; but if the city should levy and collect within the statutory limits the amount requested, although not taking into account the resources on hand, it will not be permitted to retain the excess levy, but must pay it to the board of education.

2. Schools and School Districts—Taxation—School Taxes.—Taxes for school purposes must be collected from all of the taxable property

in the city by whomsoever assessed, and is not confined to such property as may be assessed by the assessor. Therefore, taxes collected from the valuations or franchises made by the state board of valuation and assessment to the extent of the levy for school purposes belongs to the board of education and cannot be held by the city.

3. Schools and School Districts—Taxation—School Taxes.—All taxes levied for school purposes in a city belongs and should be paid to the board of education, as it would be in violation of sections 180 and 184 of the constitution, for the city to appropriate or devote the taxes so collected for any other purpose, and the case of the City of Paducah v. Board of Education of Paducah, 108 Ky. 209, in so far as it conflicts with this principle, is unsound.

FRANK V. BENTON for appellant.

BRENT SPENCE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Plaintiff (appellant) brought this suit against the defendant (appellee) to recover of it collected but unpaid school taxes for the years 1908-1913 inclusive, aggregating the sum of $27,497.90. The sum alleged to have been collected and unpaid for each of the years excluding 1913 is, for 1908, $5,929.91; for 1909, $4,848.73; for 1910, $4,365.52; for 1911, $10,466.11, and for 1912, $1,887.63. The petition also claimed a balance due the plaintiff for the year 1913, but during the progress of the cause the suit was abandoned as to the amount it sought to recover for that year.

In addition to a denial, several defenses, or supposed ones, were interposed by the answer, and after the issues were made up the case was transferred to equity and referred to a commissioner to take proof and report the sums, if any, which the facts show to be due the plaintiff for each of the years included. The commissioner reported that he found a balance collected by the defendant and unpaid, for the year 1908, of $5,586.35; for the year 1910, $1,308.00, and for the year 1911, $12,916.74. He declined to recommend a judgment for any sum for the year 1908 because the plaintiff had not, when it requested the defendant to make the levy for that year, included as a part of its resources on hand a cash item of $6,551.74. He recommended a judgment for the year 1911 only for the amount claimed in the petition, which was something near $2,500.00 less than the sum he found to be due for that year. He found noth-

ing due for the years 1909 or 1912. Exceptions were filed to this report by both plaintiff and defendant, and upon trial they were each overruled and a judgment was rendered in favor of the plaintiff for the sum of $11,774.11, from which both parties have appealed to this court.

The evidence taken and reported by the commissioner, which is all that is in the record, shows beyond dispute these facts: That up to June 1, 1915, there had been collected by the defendant under the levy for school purposes during each of the current years involved herein, together with delinquent taxes for each of them, plus collections from the bondsmen of a defaulting tax collector, the following sums in excess of what it has paid the plaintiff: For 1908, $2,743.63; for 1909, $2,381.71; for 1910, $1,103.34; for 1911, $10,680.93, and for 1912, $6,206.40. In none of the years do the amounts either levied or collected equal that which was requested of defendant by the plaintiff, except as to the amount requested for *maintenance* of the schools for the year 1912. In that year the plaintiff requested for maintenance purposes the sum of $51,727.57. The amount collected for that purpose for that year is $55,578.04, but it paid for such purpose only $50,000.00. There was requested for sinking fund purposes for that year $11,696.00, but there was a less sum levied for that purpose and only $7,628.36 collected and but $7,000.00 paid. The commissioner also found, and which was confirmed by the court, that in none of the years did the plaintiff legally request the levy and collection of any sum for *sinking fund* purposes, as authorized by section 3219 of the Kentucky Statutes. There was for each of the years except 1912 (the facts about which we have stated above) a request made for sinking fund purposes of a round sum of $10,000.00. Regarding this as no request at all, for the year 1909, the commissioner found that there had been paid to the plaintiff more than $46,480.61, the amount which it requested for that year for maintenance purposes, and disallowed plaintiff's claim for any amount for that year, although the fact is that it had collected for both maintenance and sinking fund purposes more than it paid, the amount hereinbefore shown for that year.

The first question then presented for consideration is whether the request for a named sum for sinking fund

purposes made by the board of education, for a city of the second class, must specify and set forth in detail the facts showing the necessity for the amount requested. The section, in so far as it applies to this subject, is:

"Said board shall annually, in the month of January, approximately ascertain the amount of money necessary to be used to defray the expense of maintaining the schools, improving or constructing of buildings, *et cetera,* thereof, and any liquidations of the liabilities during the current fiscal year, and report the same, together with the amount to be received from the common school fund of the state of Kentucky (which amount the board shall ascertain by taking the census required by law, in April) to the Auditor, and thereupon the general council shall, at the request of said board, levy and collect such taxes as may be requested, and the money arising from said levy shall, under the direction and control of said board, be used for the benefit of the common schools and for the purpose of paying off the indebtedness of said board."

It will be seen that it is the duty of the board of education in such cities, to which the defendant belongs, to "approximately ascertain the amount of money necessary to be used . . . . and report the same, together with the amount to be received from the common school fund of the state," etc.

It is nowhere to be gathered from the statute that the board of education is required to report to the city the evidence upon which it makes its approximate ascertainment of the funds needed. After making such ascertainment the only remaining thing for the board of education to do is to report same to the city, whereupon it becomes its duty to make the levy, provided it can do so within the limitation rates fixed by the law. If it cannot raise the requested amount within such limitation rates, it would no doubt be its duty to make a levy to the extent of its authority within the limitation of such rates so as to produce a sum that would approximate the nearest possible to the sum requested.

The board of education is an entirely independent institution from the city, and has under its control a department of government totally and wholly distinct from the municipality. It is in every sense of the term an agency of the state, and while the immediate effects of

its administration may be locally confined, it is nevertheless engaged in an entirely different work from that of running a municipality or any part thereof. To require it to submit the evidence of facts upon which it bases its request for the tax levy would at least in a sense clothe the city with revisory powers over it as to the amount of taxes that should be levied for school purposes, for there could be no other reason for requiring the board of education to furnish to the city the facts except to enable the latter to govern its actions thereby. True, if the board of education as a matter of fact should refuse to take credit by the items specified in the statute and required by it to be included in the sum ascertained to be necessary for the proper conduct of the schools, the city could decline to make the levy for any sum in excess of that which was necessary to produce the ascertained and requested amount, together with other resources mentioned in the section, if any, which the board of education might have on hand.

The right of the city, under such circumstances, to refuse to make the levy requested by the board of education unless the latter should report its resources composed of the items mentioned in the statute, has frequently been held by this court, the latest case being that of Board of Education of Newport v. City of Newport, 171 Ky. 234. It is true that in that case the amendatory statute of 1912, sec. 3235a, Kentucky Statutes, with reference to schools in cities of the second class was considered. But the duties of boards of education in such cities, prior to the enactment of that act, with reference to requesting the levy of taxes for school purposes and requiring a report of its resources to be made are practically the same, and the principle decided in the case referred to is applicable here.

As to the proposition that the city has no right to demand of the board of education the facts upon which its estimate was based and showing the necessity for the amount requested, to which we have previously adverted, analogous cases from this court are: Fiscal Court of Logan County v. Board of Education of Logan County, 138 Ky. 98; Board of Education of City of Bowling Green v. Townsend, 140 Ky. 248.

In the first case the Board of Education of Logan County requested of the fiscal court of the county a levy for school purposes. The fiscal court saw proper

to question the necessity for the amount requested, and assumed to exercise a supervisory control over not only the amount requested, but the purpose for which it should be spent. All such assumed authority on behalf of the fiscal court was denied by this court when in the course of the opinion it said:

"The board of education has control of the educational interests and needs of the county, and it is the duty of the board before asking the fiscal court to make a levy for educational purposes to estimate the amount that in the judgment of the board may be needed for this purpose. And when the board of education requests the fiscal court to levy a property and capitation tax within the statutory limit, it is the duty of the fiscal court to levy the property and capitation tax requested by the board, if it is within the statutory limit. The fiscal court has no discretion to exercise on this subject. It must lay the levy demanded. In submitting to the fiscal court an estimate of the amount that in the judgment of the board is needed it is not necessary that the board should mention the specific purposes, or any of the purposes, to which it intends to apply the funds. The expenditure of the funds within the statutory limits is entirely within the discretion of the board of education."

While it is true that in that case the law governing the management and control of rural schools was under consideration, the principles and rules governing the authority whose duty it is to make requests for the taxes and governing the one which levies and collects the taxes are analogous, and what we have quoted is applicable here.

In the Bowling Green case the charters of cities of the third class with reference to schools was under consideration. Those cities have a board of education to govern the schools therein with prescribed powers, many of which are similar to those of such boards in cities of the second class. The board of education of the city of Bowling Green demanded or requested of the city council to levy and collect a certain amount for school purposes, which the city declined to do, and in a suit brought for the purpose of forcing it to do so, it, for one of its defenses, denied that the sum demanded and requested was necessary or required to conduct the schools for the current year. This necessarily involved

an investigation into the purposes for which the sum to be raised should be expended. This defense by the city was refused, and in denying its sufficiency it is said in the opinion:

"Where proper demand is made within the limits prescribed by law, the council will not be permitted to refuse to comply with the board's demands, unless it can show that the members of the board acted corruptly or in bad faith, or that they embraced in their expenditures items not authorized by law. That in their opinion the demands of the board are excessive or extortionate, is not sufficient. If the contention of counsel for appellees were sound, we would have the courts passing on the question of the sufficiency of the number of teachers, the amount of salaries paid, etc. The legislature did not mean that either the general council of the cities or the courts should determine these questions; they were left solely to the boards of education which were created for that purpose. (City of Owensboro v. Board of Trustees Owensboro Public Schools, 10 Ky. Law Rep. 40; Prowse v. Board of Education of Christian County, 120 S. W. 307; Fiscal Court of Logan County, et al. v. Board of Education of Logan County, 127 S. W. 527.)"

We conclude, then, that the finding of the commissioner, and the judgment of the court confirming it, to the effect that no sum was requested by the plaintiff in any of the years covered by this suit for sinking fund purposes, because the requests were not accompanied with a statement of the specific purposes for which the fund was requested, cannot be upheld, and such finding is, therefore, erroneous.

It is alleged, and the commissioner so found, that for some of the years involved, notably 1908, the plaintiff in making its request of the defendant for the levy and collection of school taxes did not report its resources as required by section 3219, which was then in force, and that in this suit it is entitled to take credit by the sums so failed to be reported. The error in this position is that it disregards the old proverb that: "There is a time for all things," which has long since ripened into a rule of law forbidding one who acquiesces in that to which he could have legally objected to thereafter insist upon the irregularity or illegality of the thing acquiesced in to his own advantage, and to the detriment of others.

In this case the defendant collected the taxes from the people for school purposes. It did not insist upon the levy being reduced by the amount of the unreported resources before making it, as it then had a right to do, and it cannot now be heard to make such an insistence when it failed to do so at the time appointed for that purpose. The tax having been levied and collected for school purposes, it belongs to the school board, and should be paid to it.

The case of Board of Education v. City of Newport, *supra,* together with many others which might be cited from this court, is authority for the proposition that if the city at the time of the request had declined to make the levy demanded because of the omission of the board of education in making its request to account for resources on hand, in a suit brought for that purpose, the request of the board of education could have been corrected so as to take account of such resources. In other words, the time to correct the request made by the board of education was when or after it was made and before the making of the levy, and not afterward. It was, therefore, error both in the commissioner and in the court to credit the defendant by any resources not taken into consideration by the board of education in making its requests for any of the years involved.

There remains but one other question, which is that relating to the taxes requested and collected for the year 1912. As we have seen, there was collected and paid to the plaintiff for maintenance purposes for that year something like $3,800.00 more than was requested. It is not pretended by the defendant that the levy rate which produced this sum was not within the limits of such rate as provided by the statute. As a matter of fact it was within such limits, i. e., the statute permitted a rate to be levied for maintenance purposes not to exceed 35 cents on each $100.00 valuation of the taxable property, and not to exceed 10 cents on the $100.00 of valuation for sinking fund purposes. The levy made for that year for maintenance purposes was less than that rate. It is, therefore, insisted by the defendant that inasmuch as it paid more than was requested it is not liable for the excess, which insistence is made upon the authority of the case of Board of Education of Paducah v. City of Paducah, 108 Ky. 209.

In the first place there is considerable difference between the facts of this case and that one, chief of which is that in this case the plaintiff, for that year, requested for sinking fund purposes $11,696.00, which defendant determined was no request at all, as we have hereinbefore discussed, but it as a matter of fact made a levy for sinking fund purposes and collected and paid to the plaintiff thereon the sum of $7,000.00, being $4,696.00 less than was requested, and being $628.36 less than it collected. The defendant levied for that year $63,922.80 for both maintenance and sinking fund purposes, which was $499.25 more than was requested, and it collected $63,206.40 for both purposes and paid to plaintiff only $57,000.00. So that, although it collected more than was requested for maintenance purposes, it did not pay plaintiff the amount which it collected for both purposes. It would, therefore, seem to make no difference upon which fund the payments which it made should be credited, the object being to require it to pay the amount that it had collected for both purposes. But, however this may be, it undoubtedly collected the taxes within the limitation of the rate of assessment fixed in the statute. When collected the sum became a fund belonging to the state and to be used and appropriated as directed by the state, which, in this instance, was by the board of education of the city of Newport. The fund constituted no part of the city funds. It was and is only the agent of the state for the purpose of producing the fund, and when produced its authority over it ceases, except to pay it as directed by the authority entitled to it, which is the board of education.

This is not only in keeping with the provisions of sections 180 and 184 of the constitution, but is following the rule laid down by this court in a great number of cases, some of which are City of Louisville v. Louisville School Board, 17 Ky. Law Rep. 698; City of Cynthiana v. Board of Education, 21 Ky. Law Rep. 731; Board of Education v. Board of Trustees, 113 Ky. 234; Board of Trustees v. Board of Education, 25 Ky. Law Rep. 341; Ramsey, et al. v. County Board of Education, 159 Ky. 827, and City of Louisville v. Board of Education of City of Louisville, 154 Ky. 316.

The first section of the constitution mentioned, among other things, provides that: ''No tax levied and collected for one purpose shall ever be devoted to an-

other purpose." In the latter section mentioned it is provided that: "The interest and dividends of said fund (that previously mentioned therein), together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose."

The language quoted from the two sections could not be made plainer. It is therein required by the most mandatory terms that whenever taxes are collected for school or other purpose the sums so produced shall neither be appropriated to nor used for any other purpose. The opinions just referred to will be found with one accord upholding the requirement of the constitutional provisions, *supra.* So that it would seem that if taxes are *legally collected* for school purposes, they cannot be held by the collecting authority and appropriated by it to another purpose.

In the statement just made we used the words "legally collected" advisedly, because if taxes were illegally collected it might be insisted with plausibility that the fund thus produced would not be one produced by the collection of taxes. In other words, that when the section refers to funds produced by the collection of taxes it means legally collected taxes, and the fact might be that the fund withheld by the city of Paducah and to recover which the suit was brought in the case of City of Paducah v. Board of Education, 108 Ky. 209, was produced by the levying of a rate in excess of that permitted by the statute, and, therefore, illegally collected, and if this were true the opinion which denied the right of the board of education to recover the sum sued for may have been rested. But, unless such was the case, we do not think the opinion is in harmony with subsequent decisions of this court, or with the requirements of the sections, *supra,* of the constitution.

Moreover, the record discloses that after the assessment of the property for the year 1912 as made by the assessor, there was added to its total amount by the State Board of Valuation and Assessment in the valuation made by it in a retrospective assessment of franchises within the city of Newport, the sum of $775,966.80, which was not included in the sum total of the assessable property made by the assessor within the city for that year at the time the assessment was made, nor was

this increase made until 1914, after which the taxes on it were collected. The rate levied for school purposes was collected on this increased assessment, but the city claims that it is not liable therefor because it insists that under section 3219 school taxes are not collectable on any property except that returned by the *board of equalization* and, as the franchise assessment was not returned by that board, but by the board of valuation and assessment, the plaintiff is not entitled to any portion of the taxes derived therefrom. To this we cannot agree. At the time of the passage of section 3219 franchise assessments were made by the city authorities and not by the board of valuation and assessment. The assessment of such franchises then came under the supervision of the board of equalization, and the legislature did not contemplate that such board might subsequently be relieved of revisory powers over such assessments, nor did it intend that if the assessment laws should be revised that the revenue to be collected for school purposes should thereby be affected. In other words, taxable property, however assessed, is subject to school taxes the same as taxes for other purposes. We, therefore, find no merit in this contention made by the defendant.

When this increased amount of property is added to the original assessment for the year 1912, it in a large measure, if not entirely, accounts for the increased collections of school taxes for that year for maintenance purposes, and defendant should not be permitted to withhold such sum from the board of education and appropriate it to its own use. It should be denied this, not only upon principles of justice and right, but it is also forbidden by the sections of the constitution heretofore considered, together with the cases cited.

We, therefore, conclude that the court erred in not sustaining appellant's exceptions to the report of the commissioner and in declining to render judgment against the defendant for $23,116.00, instead of the judgment it did render.

Wherefore, the judgment is reversed, with directions to the lower court to render judgment in favor of plaintiff for the sum of $23,116.00, and for proceedings consistent with this opinion.