# City of Louisville et al. v. Board of Education of Louisville.

## June 21, 1946.

Gilbert Burnett and Alex P. Humphrey for appellants.

William T. Baskett for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The Board of Education of Louisville deemed it desirable and necessary to raise $8,000,000 by the issuance of bonds for acquiring, erecting, improving and furnishing school property. It followed the procedure specified in KRS 162.080, and certified its action to the Board of Aldermen of the City of Louisville, which is the proper tax-levying authority, for appropriate action under the statute relating to the holding of a referendum election. The Board of Aldermen declined to comply until important legal questions should be judicially determined. This suit for a declaratory judgment is for that purpose.

The questions are whether the bonds, if authorized by the electorate, will be obligations of the City or of the Educational District; and if they should be held to be bonds of the District, whether or not the net outstanding school bonds previously issued by the City are to be likewise regarded so as to be a charge against the constitutional maximum limitations on its indebtedness. Since the boundaries of the educational district and the

City are the same, and the property that would be subject to taxation to liquidate the bonds identical, the only practical difference would be the effect upon the limitation of the City or District to issue other bonds in the future.

The limitation on indebtedness of the City of Louisville is ten per cent of the assessed value of taxable property (Sec. 158, Ky. Const.), which was approximately $45,200,000 as of July 1, 1945. Deducting the present city indebtedness, $28,300,000, there is a margin of approximately $16,900,000. The net outstanding bonds previously issued by the city for school purposes included in the present indebtedness amount to about $6,-850,000. The limitation of the Board of Education, as a separate municipality, is two per cent on the taxable value of property (Sec. 158, Const.) and that was approximately $9,000,000 on July 1, 1945. The Board of Education has not heretofore issued any bonds. The City takes the position that its outstanding school bonds ($6,850,000) are to be deemed bonds of the District and a charge against its limitation, which would leave it a margin of only $2,150,000. The Board of Education contends that the outstanding school bonds of the city should not be charged up against its limitations at all. It further contends the proposed bonds, if authorized, will be obligations of the City of Louisville. If the present issue alone be deemed that of the educational district, there would be left a margin of only $1,000,000, and the Board insists that this would be a serious handicap to meeting the needs of further rehabilitation and improvement of its property and development required by the rapidly expanding city boundaries and population.

The circuit court declared it to be the duty of the Board of Aldermen to provide for holding the referendum election and issuance of the bonds should they be authorized by the voters, and if issued that they would constitute an obligation of the educational district and not of the city. He held that no part of the school bonds heretofore issued by the city shall be considered in fixing the limitation of the indebtedness of the educational district.

In 1934 the General Assembly enacted a comprehensive revision of the school laws, which became known as the School Code of 1934. Ch. 65, Acts of 1934. The

present statutes relating to education, with a few exceptions, are based upon that Act. Note Title XIII, Chapter 156, Kentucky Revised Statutes. The Act revolutionized many of the statutory provisions pertaining to educational organizations within the state and to their financing. Prior thereto the several statutes authorized various classes of cities to issue bonds for school purposes as their own obligations. The present outstanding school bonds of Louisville were approved in Bohannon v. City of Louisville, 193 Ky. 276, 235 S. W. 750, and Bullitt v. City of Louisville, 213 Ky. 756, 281 S. W. 1031. As the chancellor well says in his opinion in this case:

"There can be no doubt that the General Assembly in enacting KRS 160.010 and 160.020 intended and did establish an independent school district in the city of Louisville, free from the control of the City, which was a radical departure from the former acts. The present Board of Education under the Act became a separate and distinct municipality or political sub-division, as an arm of the state government, to function within and coterminous with the boundary of the city of Louisville; in a sense, a wheel within a wheel. Its purpose is to provide proper education facilities, such as buildings, equipment, courses of instruction and teachers, within its boundaries. It is a function exclusively delegated to it; therefore, it must of necessity be free within Constitutional limits to exercise that authority. Coppin v. Board of Education of City of Covington, 155 Ky. 387, 159 S. W. 937."

With that viewpoint, the court appears to have been impelled by our decision in Board of Education of the City of Corbin v. City of Corbin, 301 Ky. 686, 192 S. W. 2d 951, to hold that the bonds could not be issued as obligations of the City; hence they must be issued as obligations of the independent school district. In that case, decided in February, 1946, the court took cognizance of the application of Section 179 of the Constitution, relating to the contribution or appropriation and the lending of credit of one municipal corporation to another taxing district or municipal corporation. We held under present laws that the educational district is entirely separate and distinct from the city, although the boundaries be conterminous, and that the City of Corbin could not constitutionally appropriate money

out of city funds to the Board of Education to supplement teachers' salaries. We therein expressly overruled Frost v. City of Central City, 134 Ky. 434, 120 S. W. 367, which had approved bonds of a city issued under its general powers for the erection of school buildings on the theory that education is a proper municipal purpose. In the principal case, the City of Corbin had acted on its own volition and under a construction of its general powers. The legislature had never authorized the use of the city's general funds for school purposes; indeed, it is doubtful if it could have provided for the diversion of taxes levied for the one purpose to that of the other. The same is true in the Frost case, where Central City had issued bonds for which there was no specific authority. This is the distinguishing characteristic of these two cases. The legislature could have authorized the action each city took, but it had not done so. Attention must be drawn to this statement in the Corbin case (301 Ky. 686, 192 S. W. 2d 952):

"Whilst this provision of the Constitution (Sec. 179) does not prohibit a municipality from participating with another municipality in a function it is permitted or required to perform by itself, and by which its inhabitants will reap a commensurate benefit, Board of Trustees of House of Reform v. City of Lexington, 112 Ky. 171, 65 S. W. 350; Crain v. Walker, 222 Ky. 828, 2 S. W. 2d 654; nevertheless it does prohibit a municipality from donating to a project from which no benefit may be received by it, or in which it may not independently engage."

Illustrative of legal joint ownership and management by a city and county of a public service, namely, a hospital, is Booth v. City of Owensboro, 274 Ky. 325, 118 S. W. 2d 684; second appeal, 275 Ky. 482, 122 S. W. 2d 111.

Section 183 of the Constitution is as broad as it is possible to frame an authority to the legislature to deal with the common schools in any way it should desire. The section is as follows:

"The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools."

As we have said, in the Act of 1934 the General Assembly, in the exercise of that broad power, dealt com-

prehensively with the common schools. Prior thereto there were different statutes, governing the schools in the cities and other municipal districts in ways more or less different one from the other. When it came to legislate on the issuance of school improvement bonds, it made the procedure and results uniform and provided for the co-operation and co-ordination of the educational districts and the city governments, or in some instances the fiscal courts of the counties. The outstanding or principal feature is the manner in which school funds shall be raised, both currently and by borrowing money through bond issues, namely, by joint operation. Such joint operation in school affairs was not novel. In one way or another it has existed throughout many years in relation to various classes of cities and the fiscal courts of the counties.

The Act is quite consistent in its terms providing that the Board of Education shall determine the need of funds and exercise its discretion with respect thereto, and then placing the mandatory duty on the tax-levying authority (a city's government or a fiscal court, as the case may be) to take hold and carry out the functions allotted to it. With respect to issuing bonds, those functions include providing for the referendum election, paying the cost thereof, and, if approved by the electorate, to have the instruments prepared and executed. Then the privilege or duty of selling the bonds passes to the Board of Education, which receives and uses the proceeds. The Act expressly makes the bonds a charge or obligation of the Board of Education (the right to issue bonds being implicit in the terms of Section 158 of the Constitution) except where the school district embraces a city of the first or of the second class. Paragraph (2) of KRS 162.090 reads:

"The tax levying authority of the district shall, in addition to the levy made for the maintenance of schools, levy annually a tax sufficient to raise a sum for the payment of interest and to create a sinking fund for the payment of the bonds at maturity. The bonds shall be a charge upon the school district, except in independent districts embracing cities of the first and second classes, in which the bonds shall be a charge upon the sinking fund of the city and the city shall be entitled to have the annual sinking fund tax provided for in this section."

It would seem that this exception came into the original draft by amendment, or perhaps in the course of enactment, for it is not entirely harmonious with some of the other language of this part of the Act. But a similar provision was contained in Chapter 90, Acts of 1912. But however it got there, or whatever the reason, by this exception the legislature exercised its broad powers granted by Section 183 of the Constitution, and made the difference. By making the sinking fund that of a city of the first or second class and giving it the proceeds of the tax and control of the fund and payment of the interest and bonds, just as the duty is imposed on the city to provide current revenue, we are constrained to hold the legislature intended that the bonds shall be obligations of the City.

We, therefore, construe the statute as imposing the obligation of the bonds upon the City of Louisville, and the duty of the Board of Aldermen to provide for the submission of the question of their issuance to the people and take other consistent proceedings. The judgment is reversed that one may be entered declaring the rights and obligations of the parties in accordance herewith.

Judgment reversed.