**R. Keith CULLINAN, Appellant,**

**v.**

**JEFFERSON COUNTY et al., Appellees.**

Court of Appeals of Kentucky.

March 17, 1967.

Rehearing Denied Oct. 6, 1967.

Robert P. Hastings, Louisville, for appellant.

E. P. Sawyer, County Atty., Charles Speed Gray, Asst. County Atty., Louisville, for Jefferson County and Jefferson County Playground and Recreation Board.

Lucian L. Johnson, Louisville, for Jefferson County School Board.

MONTGOMERY, Judge.

The question is whether sovereign immunity extends to Jefferson County, Jefferson

County Board of Education, and Jefferson County Playground and Recreation Board so as to bar an action by R. Keith Cullinan for damages arising from his stepping into a hole on the premises of the Middletown Elementary School. Summary judgment was granted on the basis that sovereign immunity barred recovery.

The appellant was engaged in playing tennis on the school premises. While attempting to stop a ball that had gone some twenty feet off the tennis court, he stepped into a hole and fractured his ankle. A supervisor of the Jefferson County Playground and Recreation Board was in attendance while appellant was playing tennis at the school ground of the Jefferson County Board of Education.

■ A board of education in Kentucky is performing a function of the state in operating the public schools as state institutions. City of Louisville v. Board of Education, 154 Ky. 316, 157 S.W. 379. "Public education has always been regarded as a matter of state concern * * *." Commonwealth ex rel. Baxter v. Burnett, 237 Ky. 473, 35 S.W.2d 857.

■ School taxes are classified as state and not local taxes. Commonwealth by Board v. Louisville Nat. Bank, 220 Ky. 89, 294 S.W. 815. Members of county boards of education are state and not municipal officers. Middleton v. Middleton, 239 Ky. 759, 40 S.W.2d 311. Local school boards fulfill a governmental function of state government by providing public education within a particular geographical area. Board of Education v. Society of Alumni of L.M.H.S., Ky., 239 S.W.2d 931.

■ This court has held that a school board is a political subdivision and arm of the state government. City of Louisville v. Board of Education, 302 Ky. 647, 195 S.W.2d 291; Board of Education v. City of Corbin, 301 Ky. 686, 192 S.W.2d 951. The sovereign immunity of the state as to the Department of Highways was upheld

after thorough consideration in Foley Construction Co. v. Ward, Ky., 375 S.W.2d 392. As an integral part of the state the Jefferson County Board of Education likewise is entitled to protection under the state's sovereign immunity. Thacker v. Pike County Board of Education, 301 Ky. 781, 193 S.W.2d 409.

■ Jefferson County is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity. Monroe County v. Rouse, Ky., 274 S.W.2d 477; Ginter v. Montgomery County, Ky., 327 S.W.2d 98; 20 C.J.S. Counties, § 1, page 753. The Recreation Board is a part of such subdivision.

Appellant relies on Haney v. City of Lexington, Ky., 386 S.W.2d 738, 10 A.L.R. 3d 1362, wherein it was held that sovereign immunity did not render the City of Lexington immune from its torts. The decision in Haney was expressly limited to a municipal corporation and the sovereign immunity of the state was again recognized.

In the Haney case it is pointed out that the Florida Supreme Court "was the first to pierce the armor of municipal immunity," citing Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A.L.R.2d 1193. In a later case, Buck v. McLean, Fla.App., 115 So.2d 764, the Hargrove case was distinguished, and it was held that "county boards of public instruction are agencies of the State and as such are clothed with the same degree of immunity from suit as is the State." In a still later case, Kaulakis v. Boyd, Fla., 138 So.2d 505, it was held that counties "partake of the sovereign immunity from liability." Thus, sovereign immunity has been held to extend to counties and county boards of education in Florida despite the holding that immunity did not extend to a municipality. Such is the situation here and no justifiable reason for holding otherwise has been advanced.

It was pointed out in Foley Construction Co. v. Ward, Ky., 375 S.W.2d 392, and in

the dissent in Haney v. City of Lexington, Ky., 386 S.W.2d 738, at page 743, 10 A.L.R. 3d 1362, that the power to grant authority to sue the Commonwealth or any of its subdivisions is within the legislative power vested in the General Assembly. Kentucky Constitution, Sections 27, 29, and 231. Section 231 provides: "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." This same language has been embodied in the Constitution since the first one. Kentucky Constitution (1792), Article VIII, Section 4; Kentucky Constitution (1799), Article VI, Section 6; Kentucky Constitution (1850), Article VIII, Section 6.

From time to time the General Assembly has provided remedies for certain torts committed by agents of the Commonwealth and its subdivisions. The remedy has been in the form of a legislative enactment which recognized the protection of sovereign immunity as it applied to the particular subdivision, either a county or a board of education, but authorized the subdivision to carry insurance to cover certain types of hazards. In each instance suit is authorized against the subdivision only for the purpose of obtaining a judgment which when final shall measure the liability of the insurance carrier to the insured party for whose benefit the insurance policy was issued. It is expressly provided that such judgment shall not be enforceable against the political subdivision or the members composing its governing board.

By KRS 67.180, 67.185, and 67.186 the General Assembly has authorized relief against the negligence of county employees in the operation of motor vehicles and hospitals and protection against compensation claims. Similar relief has been authorized by KRS 160.310 against the negligence of drivers or operators of school buses, other motor vehicles, and motor equipment owned or operated by a board of education. In each of those statutes the sovereign immunity of the county or board of education is expressly recognized and preserved.

The General Assembly at its regular 1966 session enacted House Bill 442, now Chapter 180, Acts 1966, pages 792–795. This Act was passed apparently as a result of the decision in Foley Construction Co. v. Ward, Ky., 375 S.W.2d 392. The Act authorizes the bringing of actions for breach of contract against the Commonwealth. It expressly provides: "All defenses in law or equity, except the defense of governmental immunity, shall be preserved to the Commonwealth."

This awareness by the General Assembly of its constitutional authority, with the corresponding responsibility, is pointed out in order to demonstrate that this court should not invade the constitutional authority of the General Assembly by holding that the doctrine of sovereign immunity does not bar a tort action against Jefferson County or the Jefferson County Board of Education. The General Assembly has shown that it will exercise the authority entrusted to it in this respect when it feels that it is needed.

It is a fundamental concept of our form of government that the members of the legislative branch of government are elected from time to time to reflect the feeling of the people and to enact laws to meet their needs. When the people of this Commonwealth want sovereign immunity waived as to counties or county boards of education, their elected legislative representatives will be charged with this responsibility.

The Supreme Court of North Dakota in Fetzer v. Minot Park District, N.D., 138 N. W.2d 601, decided recently, reached the same conclusion in a similar case. The North Dakota Constitution, Section 22, provides that "suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct." The language is strikingly similar to Kentucky Constitution Section 231. In denying the action the court recognized the constitutional authority reposing

in the Legislature and refused to assume any legislative function.

The Missouri Supreme Court recently upheld the doctrine of sovereign immunity in an action by a student against a public school district for injuries received while wrestling as a part of a physical education class. Smith v. Consolidated School District No. 2, Mo., 408 S.W.2d 50. It was pointed out that the rejection of the theory of governmental immunity in California had created such chaos that immediate remedial legislative action was required. Problems of a Sovereign Without Immunity, 36 So.Cal.L.Rev. 168. Reference was also made to Tesone v. School District No. RE–2, in the County of Boulder, etc., 152 Colo. 596, 384 P.2d 82, wherein it was said that the removal of sovereign immunity and the creation of liability against a governmental agency for the negligent acts of its servants "must be a creation of the legislative branch of the government." See also Supler v. North Franklin Township, Washington County School District, 407 Pa. 657, 182 A.2d 535, and Campbell v. Pack, 15 Utah 2d 161, 389 P.2d 465.

In Gnau v. Louisville & Jefferson County Metropolitan Sewer District, Ky., 346 S.W. 2d 754, after pointing out that a limited waiver of immunity exists by reason of KRS 44.070 et seq., dealing with the Board of Claims, the court said:

> "Until the Legislature sees fit to waive immunity for public agencies other than those directly administered by the central State government, then such immunity will continue for all such public agencies performing a governmental function of the sovereign."

█ It, therefore, is concluded that the relief sought here will have to come from the General Assembly.

Judgment affirmed.

WILLIAMS, C. J., and MILLIKEN, OSBORNE, and STEINFELD, JJ., concur.

HILL and PALMORE, JJ., dissent.

MILLIKEN, Judge (concurring).

I concur in the majority opinion because I think it fairly reflects the law as it is, but I rejoice in the minority opinion for calling attention to the harshness of the effects on unfortunate persons so often wrought by the doctrine of sovereign immunity.

The taking of private property for public use involves a deliberate, intentional act of the various units of government which are authorized to exercise the power of eminent domain and the law justly compensates the individual for the taking; but personal injuries to our citizens which are inflicted by governmental units or agencies are perhaps exclusively the result of negligence on the part of a governmental employee or officer.

As a result of their respective natures, the taking of property can be considered with its budgetary effect on the public treasury in mind, but a large judgment against a local school board, for example, for the negligence of an employee might very well result in closing the schools in that school district if the judgment were collectible by execution.

Because of the budgetary dangers and the many unforeseeable side effects inherent in judicial withdrawal of the defense of sovereign immunity from the sundry governmental units of the state (as distinguished from the State government itself) which have so long operated within its protection, I adhere to the established law as expressed in the majority opinion, but I do believe that some comprehensive legislation is possible to soften the harsh results to the victims of the wrongful acts of these protected governmental units by authorizing the purchase of liability insurance by them and permitting limited recovery, within the terms of the policies for injuries inflicted by their wrongful acts.

PALMORE, Judge (dissenting).

In Foley Construction Company v. Ward, Ky., 375 S.W.2d 392 (1964), we held that the Commonwealth of Kentucky and its administrative agency, the Department of Highways, which is a part of the executive branch of the state government, are protected by the doctrine of sovereign immunity. The source of that immunity is § 231 of the Constitution, which provides as follows:

> "§ 231. *Suits against the Commonwealth.* The General Assembly may, by law, direct in what manner and in what courts suits may be brought *against the Commonwealth.*" (Emphasis added.)

To hold otherwise would necessarily have rendered § 231 meaningless. But the extension of § 231 to suits against other units of government, in which no recovery would or could constitute a claim upon the state treasury, is a conclusion that is not and never was demanded by its language.

The viewpoint of the majority of the court has been stated ably and well. Nonetheless, it is my belief that sovereign immunity should be limited strictly to what the Constitution demands, for the simple reason that in a civilized society it is morally indefensible. The very idea that an innocent citizen run down on the street by a reckless motorist can recover of the driver's employer if the employer is another private citizen, or a private business organization, but has no such recourse if the employer happens to be one of the myriad governmental agencies which today engage in so many activities formerly considered to lie within the exclusive domain of private enterprise, is offensive on its face. It is no answer to say that the government must see to its fiscal integrity. So must every private citizen be concerned for his own financial resources. It is no more a hardship for a governmental unit to buy liability insurance than it is for a private individual.

Nor is it an answer to say that when the public is ready to right the wrong it will do so through its representatives in the General Assembly. The average man in the street never heard of sovereign immunity and would scarcely believe it if he did. Indeed it *is* unbelievable. And it is in the name and for the sake of the average citizen that I record this protest against it.

"The shocking effect of the immunity doctrine is well illustrated by the fact that, in view of some courts, no immunity attaches where property rights are violated by governmental action, but does attach where it is merely a matter of the life or limb of a human being.

"Where property rights are infringed, the courts are willing to rely upon the overriding constitutional principle prohibiting the taking of private property for public use, and to hold a governmental unit or agency liable for such an infringement. On the other hand, a constitutional guaranty of the right of an action of wrongful death will as readily be disregarded and held insufficient to defeat governmental immunity." Annotation, "Immunity from liability for damages in tort of state or governmental unit or agency in operating hospital," 25 A.L.R. 2d 203, 210.

Cited as authority for this preposterous anomaly are the decisions of none other than our own court in Twyman v. Board of Council of Frankfort, 117 Ky. 518, 78 S.W. 446, 64 L.R.A. 572, 4 Ann.Cas. 622 (1904), and Ketterer v. State Board of Control, 131 Ky. 287, 115 S.W. 200, 20 L.R.A., N.S., 274 (1909). If property is damaged, either wilfully or through negligence, the court "implies" a promise to pay. See Curlin v. Ashby, Ky., 264 S.W.2d 671 (1954).

The word "shocking" is well said. It is inexcusable. I rest my case on the proposition stated long ago by one of the greatest human beings of all time: "It is as much the duty of Government to render prompt justice against itself in favor of citizens as it is to administer the same between private individuals." First Annual Message by

Abraham Lincoln, December 3, 1861, in "The State of the Union Messages of the President, 1790–1966," Vol. II, p. 1060 (ed. by F. T. Israel, 1966).

HILL, J., joins in this dissenting opinion.