Dennis J. LISACK, Appellant,

v.

NATURAL RESOURCES AND ENVI-
RONMENTAL PROTECTION
CABINET, Appellee.

No. 91–CA–002364–MR.

Court of Appeals of Kentucky.

Nov. 6, 1992.

Dennis J. Lisack, pro se.

Charles W. Kurtz, Com. of Ky. Natural Resources and Environmental Protection Cabinet, Frankfort, for appellee.

Before HOWERTON, HUDDLESTON and MILLER, JJ.

HUDDLESTON, Judge.

Dennis J. Lisack appeals from an order of the Franklin Circuit Court dismissing his tort action against Kentucky's Natural Resources and Environmental Protection Cabinet on the ground that it is immune from suit. Because we agree that the Cabinet enjoys sovereign immunity, we affirm.

Lisack is founder of Exmet of Kentucky, Inc., a manufacturing concern devoted to producing zinc sulfate micronutrient fertilizer and animal feed. Exmet is now in Chapter 7 bankruptcy.

As conceived by Lisack, Exmet's sole business was to receive non-hazardous, non-regulated smelter by-products as a raw material source for fertilizer and feed production. Exmet's business plan did not contemplate the establishment of a hazardous waste treatment center.

In March 1986, Lisack on behalf of Exmet contracted to secure a smelter product from Chemetco, a Delaware corporation operating in Illinois. Both verbally and in written correspondence, Chemetco confirmed that the material to be shipped to Exmet was a by-product of its smelter process, not hazardous waste.[1]

Prior to entering the March 1986 contract with Chemetco, Lisack had spoken with representatives of Kentucky's Natural Resources and Environmental Protection Cabinet in an effort to secure a ruling as to whether the nature of the materials Exmet planned to receive and to process would require that a hazardous waste permit be obtained. The Environmental Protection Cabinet informed Lisack that it did not render advisory opinions regarding hypo-

---

1. The generator of waste is charged with determining whether the waste is harmful—KRS 224.46–510(2).

thetical situations, notwithstanding the fact that KRS 224.10–100(14) lists as one of the Cabinet's duties that it "Advise, consult, and cooperate with ... affected persons, groups, and industries."

In July 1986, after having entered the contract with Chemetco and undertaken substantial preparation of Exmet's Louisville processing facility, Lisack addressed a comprehensive letter/report to the Environmental Protection Cabinet. This document described in detail the raw material Exmet was receiving from Chemetco, the Exmet manufacturing process, and the final product. Pursuant to the Cabinet's "advise and consult" mandate, Lisack requested that the Cabinet confirm Chemetco's written assurances that the materials being shipped to Exmet did not constitute hazardous waste.

Lisack recognized that if Chemetco's characterization of these materials was erroneous, Exmet would be operating a non-licensed waste treatment center in violation of Kentucky law. He expressed his ready willingness to obtain the appropriate permits, if needed.

Also in 1986, following Exmet's execution of the Chemetco contract and the initiation of zinc oxide deliveries to Exmet's Louisville facility, Frit Industries of Alabama complained to the Environmental Protection Cabinet that Exmet was illegally receiving hazardous waste material from Chemetco.

Although having before it Lisack's formal ruling request and the Frit Industries complaint, the Environmental Protection Cabinet refused to make comment regarding the propriety of the Exmet operation, reiterating its "no advisory opinion" position. The Cabinet maintained this posture despite repeated follow-up calls and visits by Dr. Hugh Spencer, Exmet's environmental advisor.

With no assistance from the Cabinet forthcoming, Lisack relied on the judgment of his advisors to conclude that his facility would not be handling hazardous waste

materials. Exmet began full operations in late 1986. The facility terminated its operations in late 1988, evidently due to financial difficulties. In early 1989, the Environmental Protection Cabinet sued Exmet and Chemetco in Franklin Circuit Court. The suit resulted in a 1990 judgment against the two companies as "jointly and severally liable for the removal and disposal of all hazardous waste at the Exmet building...." Both companies were found to have violated Kentucky's statutes and regulations prohibiting the un-permitted treatment, storage, and disposal of hazardous waste.

Lisack filed the present action against the Protection Cabinet in 1991, alleging that the Cabinet was grossly negligent in not fulfilling its regulatory mandate *re* Exmet. Lisack submitted that the Cabinet's negligence:

> ... caused Dennis J. Lisack harm and damage by allowing the company which he organized and to which he brought the investment capital in the form of trusted friends and associates as stockholders to operate as a non-permitted hazardous waste treatment and storage center.

Lisack further maintained that the Cabinet's negligence:

> ... caused serious and irreparable harm to Dennis J. Lisack's principal business and occupation which is the formation of new business ventures and the associated confidence of financiers and investors. For the company, Exmet, to simply not have succeeded is one matter and is expected in the business. For the company not to have succeeded and then to be accused of illegal activities by the very regulatory agency whose advice was actively sought at the onset is a disgrace to the Commonwealth and has caused great personal and financial harm and loss to Dennis J. Lisack.

Furthermore, as if gross negligence is not enough, the Cabinet then chose to accuse Exmet and Dennis J. Lisack as the organizer and promoter of Exmet of

'sham' recycling to the ultimate and final detriment of Dennis J. Lisack's financial well being and future business prospects.

The Cabinet moved to dismiss Lisack's action for failure to state a claim on which relief could be granted, on sovereign immunity grounds, and for lack of subject matter jurisdiction. The trial court found that Kentucky's General Assembly had not granted access to the courts for a negligence action against a sovereign organ of government. Lisack's complaint was therefore dismissed, with prejudice, on the basis of sovereign immunity. This appeal followed.

■■■ We see nothing in the Environmental Protection Cabinet's organization and funding to indicate that it is anything but a state agency "under the direction and control of the central State government and ... supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." *Gnau v. Louisville & Jefferson County Metropolitan Sewer Dist.*, Ky., 346 S.W.2d 754, 755 (1961). Under the authority of *Gnau* as construed by *Kentucky Center for the Arts Corp. v. Berns*, Ky., 801 S.W.2d 327, 331 (1991), we believe the Environmental Protection Cabinet to be a state agency enjoying sovereign immunity.

We further note that the question of the Environmental Protection Cabinet's sovereign status has been largely settled by the Kentucky Supreme Court's treatment of the issue in *Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer Dist.*, Ky., 805 S.W.2d 133 (1991).

Calvert Investments sued the Environmental Protection Cabinet and two other governmental entities alleging that the three had tortiously conspired to deprive Calvert of its business interests, and tortiously interfered with a contract Calvert had with a Kentucky city. The trial court dismissed the complaint against the Protection Cabinet based on sovereign immunity, and we affirmed.

In its appeal to the Kentucky Supreme Court, Calvert conceded that the Environmental Protection Cabinet is an agency of state government, but argued that state sovereign immunity does not extend to intentional torts. The Supreme Court addressed this argument as follows:

The appeal against the Natural Resources Environmental Protection Cabinet, *which all parties agree is an arm of state government constitutionally protected by sovereign immunity,* centers on Calvert's claim that sovereign immunity protection does not apply to intentional torts. * * * As we have said earlier in this Opinion, our decision that the state is not liable for the torts of its agents is not a matter of choice, but of constitutional mandate for public agencies that qualify for state sovereign immunity under the Kentucky Constitution, §§ 230 and 231. In establishing the sovereign immunity principle, these two sections of the Kentucky Constitution make no distinction between intentional and unintentional torts. Therefore we are not free to make any such distinction. A wrong is a wrong, whether intentionally or negligently committed, but unless our Constitution is changed the sovereign state cannot be held liable in a court of law for either intentional or unintentional torts committed by its agents.

*Calvert,* 805 S.W.2d at 139 (Emphasis supplied) (Citations omitted).

Sovereign immunity is an anachronistic emblem of a bygone age. As expressed by Justice John Palmore's noted dissent in *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407, 411 (1967): "[S]overeign immunity should be limited strictly to what the Constitution demands, for the simple reason that in a civilized society it is morally indefensible." The *Calvert* Court notes:

Except for an occasional lapse, our Kentucky Supreme Court has marched along this enlightened path [toward the abolition of sovereign immunity].... We have progressed to the point where, as duty requires, we defer to the sover-

eign immunity of the central state government mandated by §§ 230 and 231 of the Constitution, but we reject extending sovereign immunity beyond 'what the Constitution demands.' Palmore, J., as quoted *supra*. The concept that the government can do no wrong or that the government cannot afford to compensate those whom it wrongs in circumstances where a private entity would be required to pay is unacceptable in a just society. *Calvert*, 805 S.W.2d at 138 (Citation omitted).

Mr. Lisack's case seems to provide yet another example evidencing that the sovereign immunity *doctrine* has outlived its usefulness. It will be small comfort to Lisack that we deny the Environmental Protection Cabinet's request for Rule 11 sanctions against him. Lisack represented himself in this matter, and made a good effort despite the obvious disadvantages of the *pro se* route. Rule 11 sanctions are clearly inappropriate.

Under the authority of *Calvert, Berns* and *Gnau*, the judgment below is affirmed.

HOWERTON, J., concurs.

MILLER, J., concurs by separate opinion.

MILLER, Judge, concurring.

I reluctantly concur. I can scarcely think of a more important function of an administrative agency than that of furnishing advice to inquiring citizens. Given the nature of environmental problems and the regulation of industry to achieve desirable environmental results, it seems only reasonable that an agency would devote the necessary resources to advisory opinions. Moreover, the government should be bound by the advice. Would it not be better for the government to bear the occasional burden of erroneous advice rather than require that industry hazard a sea of doubt and, perhaps ultimately, financial ruin?