COMMONWEALTH OF KENTUCKY
BOARD OF CLAIMS, Appellant,

v.

Randall Wayne HARRIS, Gary Barlow, Don Bondurant, John Does, Cliff Gill, Kenny Meeks, John Ringstaff, and Louis Wood, Appellees.

No. 2000–SC–0409–TG.

Supreme Court of Kentucky.

Nov. 21, 2001.

William H. Fulton, Kristin M. Lomond, Woodward, Fulton and Hobson, Louisville, G. Mitchell Mattingly, Legal Counsel, Board of Claims, Frankfort, Counsel for Appellant.

Michael M. Pitman, Haverstock, Bell & Pitman, Murray, Counsel for Appellee, Randall Wayne Harris.

William Pinkston, Paducah, Counsel for Appellees, Gary Barlow, Don Bondurant, John Does, Cliff Gill, Kenny Meeks, John Ringstaff, and Louis Wood.

Irvin G. Maze, Jefferson County Attorney, N. Scott Lilly, First Assistant Jefferson County Attorney, I.G. Spencer, Jr., Assistant Jefferson County Attorney, Louisville, Counsel for Amicus Curiae, Jefferson County, Kentucky.

JOHNSTONE, Justice.

Appellant, Commonwealth of Kentucky Board of Claims, appeals from the April 6, 2000 decision of the McCracken Circuit Court remanding Appellee Harris's suit to the Board of Claims. The Board of Claims argues that it does not have jurisdiction over claims against the county appellees under the Board of Claims Act. We agree and reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On October 8, 1996, Randall Lee Harris was arrested on the charge of driving under the influence and taken to the McCracken County Jail. At 3:05 a.m. Harris was processed on that charge and placed into custody. Harris, a leg amputee, advised the jailers that he was taking medication for depression, that his wife had been recently hospitalized, and that he had suffered a recent head injury. In addition to these facts, the admitting officers confessed that Harris appeared drunk. However, Harris was not placed in a showerless detox cell as required by McCracken County Jail policy. Rather, he was placed in an isolation cell because that cell had a bunk. The jailers thought this would be more comfortable for Harris with his artificial leg. Also, Harris was allowed to keep his belt—this too was against jail policy—because the jailers thought Harris

needed it to keep his prosthetic leg in place. At about 6:00 a.m., Harris was found dead, hanging by his belt from the showerhead in his cell.

On December 12, 1996, the McCracken District Court named Appellee Randall Wayne Harris as the Administrator and Personal Representative of the Estate of Randall Lee Harris. On October 6, 1997, Appellee Harris filed a verified complaint with the Board of Claims against Appellees Gary Barlow, Don Bondurant, Cliff Gill, Kenny Meeks, John Ringstaff, and Lewis Wood (hereinafter collectively referred to as "county appellees"). The complaint filed against the county appellees was made against each individually and in their official capacities as jailer (Cliff Gill) or deputy jailers of the McCracken County Jail. Claims also were asserted against the Commonwealth of Kentucky, Department of Corrections, Corrections Cabinet, and the Local Corrections Facilities Construction Authority. On October 7, 1997, Appellee Harris filed a tort action in McCracken Circuit Court against the same parties in their individual and official capacities, as well as the architects and engineers involved in the construction of the McCracken County Jail.

On May 21, 1998, the Board of Claims dismissed Appellee Harris's claims, finding that it did not have jurisdiction over claims against counties or county officials under the Board of Claims Act, KRS 44.070, et seq. Appellee Harris appealed the Board of Claims' ruling to the McCracken Circuit Court. The Circuit Court consolidated Appellee Harris's tort action with the appeal. The county appellees filed a motion for summary judgment, in which they argued that the Board of Claims had exclusive jurisdiction over the claims against them. The Circuit Court then held the matter in abeyance.

On April 6, 2000, the McCracken Circuit Court entered a judgment reversing the Board's decision dismissing Appellee Harris's claims for lack of jurisdiction and remanded the claims against both the county appellees and the state agencies to the Board of Claims for a hearing on the merits. Also, it abated the county appellees' summary judgment motion pending resolution of the claims remanded to the Board of Claims. The Board filed a timely Notice of Appeal to the Court of Appeals on May 1, 2000. The Board only appealed from that part of the trial court's order that found that the Board has exclusive jurisdiction over claims against counties and county officers and employees.

The Board of Claims moved this Court to accept the transfer of this appeal from the Court of Appeals. In support of the motion, it cited a large number of pending appeals that concern the issue of whether the Board of Claims has jurisdiction over claims against counties under the Board of Claims Act and the uncertainty which exists among the members of the bar as to the proper venue in which to file claims against a county or county employees. Pursuant to CR 74.02, we granted the motion by order entered on August 24, 2000. This appeal followed.

### RIPENESS

The trial court's ruling made no distinction between the claims brought against the county appellees in their individual and official capacities. Because the distinction is important, we make it here.

The individual capacity claims may or may not implicate Board of Claims' jurisdiction. *Yanero v. Davis*, Ky., 2001 WL 1485877 (2001), holds that public employees, while acting in their individual capacities, do not share the immunity of the governmental unit for which they

work. *Id.* at ——.[1] Rather than sharing their government employer's immunity, public employees acting in their individual capacities are entitled only to official immunity for their discretionary acts occurring within the scope of their employment and to no immunity for their ministerial acts. *Id.* at ——. While official immunity can be absolute, as where the employee is sued in his or her official capacity, in most cases public employees only enjoy a qualified official immunity. *Id.* at ——. Jailers and deputy jailers can be sued for their tortious acts or omissions occurring within the scope of their employment. *See, e.g., Sudderth v. White,* Ky.App., 621 S.W.2d 33 (1981). If those acts or omissions occur during the performance of ministerial functions, they can be held liable in circuit court and the Board of Claims would have no jurisdiction over them. *Yanero,* —— S.W.3d at —— (Any attempt by the General Assembly to transfer jurisdiction over non-immune officers and employees from the Circuit Court to the Board of Claims is unconstitutional.). The issue then becomes whether the Board of Claims has jurisdiction over county employees when sued in their official capacities, or when sued in their individual capacities for acts with respect to which they are entitled to qualified official immunity, *i.e.,* discretionary acts performed in good faith. *Yanero,* —— S.W.3d at ——.

■ The individual capacity claims only indirectly implicate the issue on appeal in this case to the extent that the county appellees may enjoy qualified immunity, since that determination first must be made by the trial court rather than this court. But the official capacity claims against the county appellees directly implicate the question of whether the Board of Claims has jurisdiction over counties and county agencies, officers, and employees. The jailer is a constitutionally elected officer of the county under Section 99 of the Kentucky Constitution. And, the jailer reports to the fiscal court, which oversees the jail's operation and budget. *See generally* KRS Chapter 441. Thus, the official capacity claims are in essence claims alleging negligent operation of the jail and are, therefore, claims against the county. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985) (Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (Internal citations and quotation marks omitted). This cloaks the jailer, in his official capacity, with the county's sovereign immunity. *See Yanero,* —— S.W.3d at ——. Since the county is entitled to sovereign immunity, *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407, 408 (1967), the sole question presented on appeal, *i.e.,* whether the Board of Claims has jurisdiction over county governments, county agencies, officials, and county employees, is an actual controversy before us that is ripe for review. *See Associated Industries of Kentucky v. Commonwealth,* Ky., 912 S.W.2d 947, 951 (1995).

**BOARD OF CLAIMS' JURISDICTION**

The Board of Claims Act, KRS 44.070(1), states in pertinent part that:

---

1. *Yanero* overrules *Franklin County v. Malone,* Ky., 957 S.W.2d 195 (1997), on this point and returns the law in the Commonwealth on this issue to where it was prior to *Malone.* So the trial court's failure to distinguish between the individual capacity and official capacity claims is quite understandable.

> A Board of Claims ... is created and vested with full power and authority to investigate, hear proof, and to compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the *Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any of its officers, agents, or employees....*

Emphasis added. As additional clarification, KRS 44.072, which is entitled "Legislative intent as to sovereign immunity in negligence claims," states that:

> It is the intention of the General Assembly to provide the means to enable a person negligently injured by the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies to be able to assert their just claims as herein provided. The Commonwealth thereby waives the sovereign immunity defense only *in the limited situations as herein set forth.*
>
> It is further the intention of the General Assembly to otherwise *expressly preserve the sovereign immunity of the Commonwealth ... in all other situations except where sovereign immunity is specifically and expressly waived as set forth by statute.*

Emphasis added.

The Board of Claims argues that, because the Board of Claims Act fails to expressly include language pertaining to counties directly or as a political subdivision of the Commonwealth, the General Assembly purposely excluded counties from the limited waiver of sovereign immunity contained therein. We agree.

 Language pertaining to counties, its officers, agents, and employees is conspicuous in its absence from the listing contained in KRS 44.070(1). A general rule of statutory construction provides that the enumeration of particular items excludes other items that are not specifically mentioned. *Smith v. Wedding,* Ky., 303 S.W.2d 322 (1957). "We will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Withers v. University of Kentucky,* Ky., 939 S.W.2d 340, 346 (1997). Obviously, there is no specific, express language of waiver in the Board of Claims Act. Nor does it contain an "overwhelming implication" of waiver as there is not a single reference in the Act to counties.

In support of his argument that county sovereign immunity is waived in the Board of Claims Act, Appellee Harris relies heavily on language contained in *Franklin County v. Malone:* "The Court of Appeals erroneously held that KRS 44.070 et seq. has no application to counties." *Malone,* 957 S.W.2d at 203–04. Apparently, and understandably, this language has caused the wave of new claims to be brought before the Board of Claims attempting to hold counties liable for their torts in that forum. We agree with the Board of Claims that the above-cited language from *Malone* is merely dicta. Nonetheless, as a matter of clarity, we hereby overrule *Malone* to the extent it is inconsistent with this opinion.

Relatedly, Appellee Harris points to the following language in *Withers* in support of his argument that claims against counties are within the jurisdiction of the Board of Claims:

> All claims against immune entities fall squarely within the purview of the Board of Claims Act where resides exclusive jurisdiction for claims against the entity. The Board of Claims Act and

sovereign immunity are co-extensive.... It follows that a plea of sovereign immunity is an admission of Board of Claims jurisdiction.

*Withers,* 939 S.W.2d at 346.

But *Withers* concerned a claim against the University of Kentucky, which, by statute, is an agency of the Commonwealth. *Id.* at 343. It is funded with money from the Commonwealth's treasury and is under direct control of the state government. *Id.* Thus, the University of Kentucky is a state agency entitled to governmental immunity. *Yanero,* —— S.W.3d at ——. As such, it expressly falls within the jurisdiction of the Board of Claims Act. KRS 44.070(1). *Withers* did not concern, directly or indirectly, whether a claim against a county can be brought in the Board of Claims and, therefore, can be distinguished from the case at bar. No language in *Withers* should be construed as holding that counties are submitting to Board of Claims' jurisdiction by virtue of claiming a defense of sovereign immunity.

 Therefore, we reaffirm our prior holdings that KRS 44.070 does not grant the Board of Claims jurisdiction over claims against counties, county agencies, officers, or employees. *See, e.g., Ginter v. Montgomery County,* Ky., 327 S.W.2d 98, 99 (1959). The trial court erred in ruling that the Board of Claims has exclusive jurisdiction over county governments and officials. Therefore, we hold that the Board of Claims has no jurisdiction over the claims against the county appellees in either their individual or official capacities.

For the foregoing reasons, we reverse that part of the McCracken Circuit Court's order that remands the claims against the county appellees to the Board of Claims, and remand this case for further proceedings consistent with this opinion.

COOPER, GRAVES, and KELLER, JJ., concur.

COOPER, J., also concurs by separate opinion, with GRAVES and JOHNSTONE, JJ., joining.

LAMBERT, C.J., dissents by separate opinion, with STUMBO and WINTERSHEIMER, JJ., joining.

COOPER, Justice, Concurring.

I fully concur in the reasoning of the majority opinion that by the very language of KRS 44.070(1) and KRS 44.072, the Board of Claims Act applies to damages proximately caused by the negligent acts of the *"Commonwealth,* any of *its* cabinets, departments, bureaus, or agencies, or any of *its* officers, agents or employees." (Emphasis added.) Although KRS 44.071 purports to extend coverage to damages caused by municipalities or their agents with respect to maintenance of state-owned traffic control devices, nothing in the Board of Claims Act purports to extend its coverage to *counties* or their departments, bureaus or agencies, or any of their officers, agents or employees. I write separately because I further believe that any attempt to apply the provisions of the Board of Claims Act, as presently written, to damages claims against counties or their departments, bureaus or agencies, or their officers, agents or employees (or, for that matter, municipalities or their agents) would be unconstitutional.

KRS 44.100 provides that all awards assessed by the Board of Claims shall be paid by warrants drawn upon the State Treasurer. *See,* Ky. Const. § 230. Thus, any award by the Board of Claims in favor of a person damaged, as here, by the negligence of a county employee would be paid not from county funds, but from the general funds of the Commonwealth. Section 176 of the Constitution of Kentucky provides:

The Commonwealth shall not assume the debt of any county, municipal corporation or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion or to suppress insurrection.

Section 177 provides:

The credit of the Commonwealth shall not be given, pledged or loaned to any individual, company, corporation or association, municipality, or political subdivision of the State . . . .

Section 157a creates an exception:

The credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes . . . .

In *Fiscal Court of Scott County v. Davidson,* 259 Ky. 498, 82 S.W.2d 801 (1935), our predecessor Court held that "Section 177 of our Constitution forbids the legislature from assuming the payment of, or paying, the ordinary, general debts of counties." *Id.,* 82 S.W.2d at 802. (The omission of a reference to Section 176 in the opinion may be a typographical error inasmuch as Section 176 appears to provide more explicit authority for this holding than does Section 177.) And in *Miller v. Sturgill,* 304 Ky. 823, 202 S.W.2d 632 (1947), it was held that a statute requiring the state to pay the premium on a county revenue bond was unconstitutional pursuant to Sections 176 and 177.

The reimbursement of the sheriff by the state for the premium paid by him on the county revenue bond is, in effect, the use of state funds for a purely local county purpose, and violates the letter and spirit of the foregoing sections of the Constitution. Section 157a of the

Constitution . . . is the sole authorization for the expenditure of state funds for the aid of a county.

*Id.,* 202 S.W.2d at 634.

If any further clarification of this principle is needed, it is found in The Official Report of the Proceedings and Debates of the Constitutional Convention of 1890. In response to a proposed amendment to delete the word "county" from the text of Section 176, Delegate P.P. Johnston of Fayette County, Chairman of the Committee on Revenue and Taxation, explained, *inter alia:*

I understand the gentleman; but it is the same old plea of general taxation for a local purpose. It is unfair to ask the people of the State to tax themselves for the relief of an individual or a subdivision of the State which, by injudicious measures, have gotten themselves into debt.

*Id.,* Vol. II, p. 2642. The amendment was defeated.[1]

Clearly, one of the purposes of Sections 176 and 177 was to preclude the General Assembly from enacting legislation authorizing payment of debts and liabilities of counties and municipalities from the state treasury. Thus, as presently written, *i.e.,* that all awards by the Board of Claims are paid from the state treasury, the Board of Claims Act could not apply to a damages claim against a county.

GRAVES and JOHNSTONE, JJ., join this concurring opinion.

LAMBERT, Chief Justice, Dissenting.

It is well settled that a county is a political subdivision of the Commonwealth and is, as such, an arm of state govern-

1. Although the amendment was obviously defeated, since Section 176 was adopted without the deletion, I am unable to locate in The Official Report of the Proceedings and Debates exactly when this particular amendment was voted down.

ment. It is clothed with the sovereign immunity of the Commonwealth.[1]

It is equally well settled that in the absence of waiver, the county is immune from tort liability because of its status as a political subdivision of the Commonwealth.[2] Thus, the majority has correctly concluded that counties are entitled to sovereign immunity and the only question is whether the Board of Claims has jurisdiction over county government. The Board of Claims statute, KRS 44.070(1), whereby immunity is waived under the provisions of the act is written broadly. The relevant language is "the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any of its officers, agents, or employees." In my judgment this is more than adequate to vest the Board of Claims with jurisdiction to adjudicate negligence claims against counties. As shown in *Cullinan, Malone,* and other cases, counties are treated as appendages of central state government. Thus, counties may be properly regarded as "the Commonwealth" and subject to Board of Claims jurisdiction. If this is not so, however, use of language such as "cabinets, departments, bureaus, or agencies" is ample. I conclude, therefore, that KRS 44.070(1) was intended to vest the Board of Claims with jurisdiction of counties where negligence is alleged.

My view in this regard is strengthened by the dreadful unfairness of the result in the majority opinion. After having held that counties are not subject to suit in circuit court, the majority has gone further and held that neither are counties subject to Board of Claims proceedings. Thus, one injured by the negligence of a county is totally and completely without a remedy or any avenue of recovery.

The holding in the majority opinion directly contradicts *Withers v. University of Kentucky.*[3] In that case, the Court analyzed sovereign immunity in connection with a claim asserted against the University of Kentucky and its medical center. This · Court held that the University of Kentucky was an immune entity as it was an arm of central state government. This Court reasoned, however, that claims against immune entities fall within the purview of the Board of Claims Act. We stated that "The Board of Claims Act and sovereign immunity are co-extensive. It follows that a plea of sovereign immunity is an admission of Board of Claims jurisdiction."[4]

The opinion of the majority evades logic and fundamental fairness. The Board of Claims was created precisely to prevent the harshness associated with the doctrine of sovereign immunity. One claiming benefits of the doctrine should not be heard to deny that the Board of Claims can hear the case and grant compensation as provided for in the Act.

STUMBO and WINTERSHEIMER, JJ., join this dissenting opinion.

1. *Franklin County v. Malone,* Ky., 957 S.W.2d 195, 203 (1997); *Cullinan v. Jefferson County,* Ky., 418 S.W.2d 407, 408 (1967).

2. *Franklin County,* 957 S.W.2d at 203.

3. Ky., 939 S.W.2d 340 (1997).

4. *Id.* at 346 (citations omitted).